United States Court of Appeals,

Fifth Circuit.

No. 93-1771.

Rose M. CARPENTER, Plaintiff-Appellant,

v.

WICHITA FALLS INDEPENDENT SCHOOL DISTRICT, Defendant-Appellee.

Feb. 15, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD, JOLLY and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Rose M. Carpenter (Carpenter) sued the Wichita Falls Independent School District (the School District) simultaneously in state and federal courts, complaining in the federal forum of a First Amendment violation, in the state forum of a breach of contract and a violation of her right to free speech under the Texas constitution. Asserting the existence of federal jurisdiction over the state-law claim, the School District timely removed the state case to federal court. The case is now before us on interlocutory appeal under 28 U.S.C. § 1292(b) from the district court's denial of Carpenter's motion to remand the state case. We reverse and remand.

### Facts and Proceedings Below

Carpenter, a twenty-year employee of the School District, worked as an administrator from 1984 to 1990. In that capacity, she coordinated the budget and course content for the district's science curriculum. In early 1990, the School District proposed an

administrative restructuring plan, to which Carpenter vocally objected. Subsequently, the School District reassigned Carpenter, demoting her from district-wide administrator to vice principal of a high school for "at-risk" students. Carpenter alleged that she was reassigned because of her objections to the restructuring plan and that the consequences of this reassignment were a reduction in responsibility, a promised reduction in pay,[1] and a violent physical assault by a student.

After challenging her reassignment through internal grievance procedures, Carpenter, on May 22, 1992, filed two separate suits against the School District, one in the United States District Court for the Northern District of Texas, Wichita Falls Division, and one in the 89th Judicial District Court of Wichita County, Texas. Both suits alleged that the transfer violated her free-speech rights. Carpenter based her state suit claims entirely and exclusively on state law, that is, on Texas contract and constitutional law. The only claim asserted in her federal suit, on the other hand, was under the First Amendment to the United States Constitution (pursuant to 42 U.S.C. § 1983).

Asserting federal-question jurisdiction over the state suit free-speech claim, the School District removed the state case to federal court on the basis of 28 U.S.C. § 1441(b). The state suit was then consolidated with the pending federal suit. The district court denied Carpenter's motion to remand the state suit, but

---

[1]According to Carpenter, the School District said a cut in pay would follow a year of work in her new position. To date, the School District has not reduced her salary.

certified the question for interlocutory appeal. 28 U.S.C. § 1292(b). We granted leave to appeal and, finding no federal jurisdiction over Carpenter's state suit, now reverse.

## Discussion

We begin with general principles. The denial of a motion to remand an action removed from state to federal court is a question of federal subject-matter jurisdiction and statutory construction subject to *de novo* review. *Garrett v. Commonwealth Mortgage Corp. of Am.,* 938 F.2d 591, 593 (5th Cir.1991). To support removal, the defendant bears the burden of establishing federal jurisdiction over the state-court suit. *See Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Moreover, because the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, *see Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986), which mandate strict construction of the removal statute. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 107, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988).

The defendant's right to remove is statutory. Section 1441 of the Judicial Code keys the propriety of removal to the original jurisdiction of the federal district courts. Removal under section 1441(b), the basis of removal here, is appropriate only for those claims within the federal question jurisdiction of the district courts, that is, for those actions "arising under the Constitution,

3

laws, or treaties of the United States."  28 U.S.C. § 1331.

A determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint. *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).  Generally, under section 1331, a suit arises under federal law if there appears on the face of the complaint some substantial, disputed question of federal law.  *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 12, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983).  Accordingly, to support removal, the defendant must locate the basis of federal jurisdiction in those allegations necessary to support the plaintiff's claim, ignoring his own pleadings and petition for removal.  A defendant may not remove on the basis of an anticipated or even inevitable federal defense, but instead must show that a federal right is "an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank,* 299 U.S. 109, 111, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

The plaintiff is thus the master of her complaint. *Healy v. Sea Gull Specialty Co.,* 237 U.S. 479, 480, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915) ("the plaintiff is absolute master of what jurisdiction he will appeal to");  *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 23, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) ("the party who brings a suit is master to decide what law he will rely upon");  *Willy v. Coastal Corp.,* 855 F.2d 1160, 1167 (5th Cir.1988).  A plaintiff with a choice between federal- and state-law claims may elect to proceed in state court on the

4

exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *Travelers Indemnity Company v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986); 1A James W. Moore & Brett A. Ringle, *Moore's Federal Practice* ¶ 0.160 (2d ed. 1979) (noting the freedom of the plaintiff to "ignore the federal ground and rely on the state ground").

However, in certain situations where the plaintiff necessarily has available no legitimate or viable state cause of action, but only a federal claim, he may not avoid removal by artfully casting his federal suit as one arising exclusively under state law. Although a defense, preemption may so forcibly and completely displace state law that the plaintiff's cause of action is either wholly federal or nothing at all. *Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists,* 390 U.S. 557, 559, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). As one leading treatise has explained,

> "[I]n many contexts plaintiff's claim may be one that is exclusively governed by federal law, so that the plaintiff necessarily is stating a federal cause of action, whether he chooses to articulate it that way or not. If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading. If, however, there is a choice between federal and state remedies, the federal courts will not ignore the plaintiff's choice of state law as

5

the basis for the action." 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3722 (2d ed. 1985).

This doctrine represents a narrow exception[2] to the rule requiring the basis of federal question jurisdiction to be found on the face of the plaintiff's well-pleaded complaint and not in any anticipated defense.

The artful pleading doctrine recognizes that the characterization of a federal claim as a state claim will not in all cases prohibit removal *when the plaintiff has no state claim at all.* The doctrine does not convert legitimate state claims into federal ones, but rather reveals the suit's necessary federal character. *See Franchise Tax Board,* 463 U.S. at 23, 103 S.Ct. at 2854 (announcing that this exception to the well-pleaded complaint rule "stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under' federal law"). Absent such extraordinary

---

[2]The Supreme Court has required that the preemption be complete. *Franchise Tax Board,* 463 U.S. 23, 103 S.Ct. at 2854. Moreover, it is the cause of action, and not a remedy, that must be preempted. *See Merrell Dow,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

So far as we are aware, the Supreme Court has clearly sanctioned the rule only in the area of federal labor relations law and the Employee Retirement Income Security Act of 1974 (ERISA), the latter on the basis of its legislative history references to the former. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62-66, 107 S.Ct. 1542, 1546-48, 95 L.Ed.2d 55 (1987) (ERISA).

circumstances,[3] the well-pleaded complaint rule governs, *id.* at 8, 103 S.Ct. at 2846, as does its corollary. *See Powers,* 719 F.2d at 766. That is, if a plaintiff indeed has a viable state law claim, he may depend on it alone and thereby defeat attempts at removal. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 391 & n. 7, 107 S.Ct. 2425, 2429 & n. 7, 96 L.Ed.2d 318 (1987) (noting that, because the plaintiff is the "master of the claim," "he or she may avoid federal jurisdiction by exclusive reliance on state law") (footnote omitted).

With these principles in mind, we turn to the face of Carpenter's state pleadings. The state court complaint ("petition") alleges violations of state law only, in particular "a violation of Plaintiff's right to free speech under the Texas Constitution, Article I, § 8." Although never asserting federal preemption of the Texas right to free speech, the School District has on several occasions suggested that this constitutional provision is "essentially" a federal claim in disguise. This argument, standing alone, disregards principles of federalism; it ignores the superiority of state-court forums for state-law claims and denigrates the state's authority to fashion independent constitutional law. With regard to the latter proposition, the Supreme Court has recognized that every state has a "sovereign right to adopt in its own Constitution individual liberties more

---

[3]As the Ninth Circuit has observed, the artful pleading doctrine should apply "only in exceptional circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Salveson v. Western States Bankcard Association,* 731 F.2d 1423, 1427 (9th Cir.1984).

expansive than those conferred by the Federal Constitution." *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 79, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980). For this reason, "[i]t is fundamental that state courts be left free and unfettered by ... [the federal courts] in interpreting their state constitutions." *Minnesota v. National Tea Company,* 309 U.S. 551, 555, 60 S.Ct. 676, 679, 84 L.Ed. 920 (1940).

The right to free speech under the Texas Constitution is broader in some respects than its federal counterpart both in wording and in substance. The state provision reads, "Every person shall be at liberty to speak, write or publish his opinion on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." Tex. Const. art. I, § 8. Unlike the First Amendment, this language is affirmative and not prohibitory,[4] a distinction that led drafters of the 1876 Texas Constitution to reject a proposal to replace this language with that of the federal version. *See Davenport v. Garcia,* 834 S.W.2d 4, 5 & n. 13 (Tex.1992); *see also O'Quinn v. State Bar of Texas,* 763 S.W.2d 397, 402 (Tex.1988) ("it is quite obvious that the Texas Constitution's grant of free speech is more broadly worded than the first amendment's").

The broader language permits a broader right. According to the Texas Supreme Court, "[I]n some aspects our free speech provision is broader than the First Amendment." *Davenport,* 834

---

[4]"Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. Const. amend. I.

S.W.2d at 8. *See also Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *O'Quinn,* 763 S.W.2d at 402; *Channel 4, KGBT v. Briggs,* 759 S.W.2d 939, 944 (Tex.1988) (Gonzalez, J., concurring). To equate these distinct constitutional provisions would be, in effect, to deny the reality and the possibility of a more expansive state liberty. We therefore cannot construe a claim brought under Article I, Section 8 of the Texas Bill of Rights to be essentially or necessarily federal in character.

The School District nevertheless argues that the "right to freedom of speech is so strongly a federal claim that even the state courts of Texas use analysis of the First Amendment freedom of speech for the analysis of the state corollary. The state claim, thus, contains essentially a federal claim." The Texas courts' possible reliance on the rules and reasoning of federal constitutional case law and scholarship in no way diminishes the independence of the state right. If, for instance, the Texas Supreme Court plainly based one of its holdings on the state, and not the federal, constitution, then that independent and adequate state ground would deny the possibility of review by the United States Supreme Court—regardless of the Texas court's reliance on federal case law.[5] *Michigan v. Long,* 463 U.S. 1032, 1039, 103

---

[5]By negative inference, section 1257 of the Judicial Code prohibits Supreme Court review of state law determinations rendered by that state's supreme court. 28 U.S.C. § 1257. The Court therefore cannot review a case that rests on an independent and adequate state ground because treatment of any federal issue would be nugatory. Because federal courts may only hear cases or controversies under Article III, it is unconstitutional for the Court to issue mere advisory opinions. *See Michigan v. Long,* 463 U.S. 1032, 1036-43, 103 S.Ct. 3469, 3474-78, 77 L.Ed.2d 1201

S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983). As the Supreme Court has recognized, a state court may choose "merely to rely on federal precedents as it would on the precedents of all other jurisdictions," thereby employing federal cases "for the purpose of guidance." *Id.; see, e.g., State v. Ball,* 124 N.H. 226, 471 A.2d 347, 352 (1983). In short, regardless of its formative reliance on federal law, the Texas constitutional right to free speech is not essentially federal, and to present a Texas constitutional claim is not necessarily to present a federal claim.

The unsurprising conclusion that there is nothing essentially federal about a claim based on the Texas Constitution is confirmed by the School District's concession at oral argument that, had Carpenter filed the state complaint originally in the federal district court, it would not present a federal question. The School District thereby admitted that there was no basis for removal jurisdiction independent of the concurrent federal suit. This concession should resolve the statutory question because, under the express terms of section 1441, only those cases that could be filed originally in federal court may be removed there. 28 U.S.C. § 1441; *see also Franchise Tax Board,* 463 U.S. at 18 n. 18, 103 S.Ct. at 2851 n. 18.

The School District, however, does not base its argument on the terms of section 1441, but rather on a footnote to a 1981 Supreme Court case, *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In *Moitie,*

_____

(1983).

10

the plaintiffs had filed and lost an antitrust suit in federal court. Instead of appealing, two of the plaintiffs thereafter filed a near-identical suit in state court, this time purportedly based exclusively on state law. Defendants then removed that suit to the federal district court, which denied the plaintiffs' motion to remand and ruled the action barred by *res judicata.* The Ninth Circuit affirmed the removal but reversed on the merits. The Supreme Court granted *certiorari* to consider the preclusion issue. *See Moitie,* 452 U.S. at 394, 101 S.Ct. at 2426 ("The only question presented in this case is whether the Court of Appeals for the Ninth Circuit validly created an exception to the doctrine of res judicata."). In footnote two of an opinion dedicated to the issue of *res judicata,* the Supreme Court affirmed the removal, observing that "at least some of the claims had a sufficient federal character to support removal" under the artful pleading doctrine, *Moitie,* 452 U.S. at 396 n. 2, 101 S.Ct. at 2427 n. 2, without citing controlling precedent and without identifying what specifically about the state-law claims was federal in character.

Relying exclusively on this enigmatic footnote, the School District argues that, by electing to simultaneously pursue a parallel federal suit, Carpenter has somehow endowed her state suit with a "sufficient federal character" to support removal.[6]

---

[6]We acknowledge that the Second Circuit has endorsed this interpretation of footnote two. In *Travelers Indemnity Company v. Sarkisian,* 794 F.2d 754 (2d Cir.1986), the court ruled that, once a plaintiff files a federal suit, he is "not free to abuse the dual court system by filing in state court a second lawsuit and resubmitting his claim as one based solely on state law." *Id.* at 761. The court then acknowledged that "[t]his

11

Whatever *Moitie* does mean, we are confident it does not mean so much. The context of the decision counsels against such a broad interpretation. *Moitie* is a *res judicata* case, not a removal case. The decision centered on the Ninth Circuit's creation of a novel exception to the rule of *res judicata,* an issue the Court was evidently eager to reach. Furthermore, the marginal treatment of the removal issue makes us hesitate to expand *Moitie* beyond its facts, for a broad interpretation would counter principles established long before, and reaffirmed after, footnote two was written.[7]

We do not believe the Court could have intended, in a case for which the removal issue was neither presented nor briefed, to bring about a significant revision of removal jurisprudence, especially one so at odds with precedent and with the language and policy of

interpretation ... limits but does not abolish the master-of-the-complaint rule." *Id.* For the reasons stated in our opinion, we join the Ninth Circuit in preferring a narrower interpretation. *See Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368 (9th Cir.1987); *see also* footnote 11, *infra.*

[7]In *Franchise Tax Board,* which followed *Moitie,* the Court unanimously reaffirmed every major principle of removal under section 1441(b) without mentioning, citing, or in any way clarifying that earlier footnote. This fact alone led one lower court to conclude that *Franchise Tax Board* "supersedes" *Moitie. Magic Chef, Inc. v. International Molders Union,* 581 F.Supp. 772, 776 n. 4 (E.D.Tenn.1983). Likewise, in *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), another unanimous decision, the Court suggested that the artful pleading doctrine should be limited to cases involving complete preemption of the state cause of action. *Id.* at 392, 396 & n. 11, 107 S.Ct. at 2430, 2432 & n. 11.

section 1441.[8]  We cannot interpret this footnote to mean that simply because a plaintiff could have joined his state-law claim with his parallel claim in federal court, his state action thereby acquires a federal character sufficient to support removal.[9]  In short, we cannot say that the failure to make a state claim pendent makes it federal.  Just as a federal court may not enjoin a state action for the same cause simply because it is proceeding concurrently, *see* 28 U.S.C. § 2283,[10] likewise a federal court may

---

[8]Certainly the Court did not purport to alter the law of removal;  indeed, the tone of the footnote is "striking in its cautiousness."  Rona L. Pietrzak, Comment, *Federated Department Stores v. Moitie:  A Radical Departure From Traditional Removal Jurisdiction or an Aberration?,* 43 Univ.Pitt.L.Rev. 1165, 1178 (1982).

[9]We also cannot regard the Court's treatment of the removal issue as a simple mistake or misstep.  Because Justice Brennan's dissent targeted footnote two, "[t]he only conclusion is that the Court said what it meant and meant what it said."  Robert A. Ragazzo, *Reconsidering the Artful Pleading Doctrine,* 44 Hastings L.J. 273, 307 (1993).  *Compare* Stanley Blumenfield, Jr., Comment, *Artful Pleading and Removal Jurisdiction:  Ferreting Out the True Nature of a Claim,* 35 UCLA L.Rev. 315, 365 (1987) (arguing that *Moitie*'s ruling on the removal issue should be disregarded).  *See also Gold v. Blinder, Robinson & Co., Inc.,* 580 F.Supp. 50, 53 n. 1 (S.D.N.Y.1984) ("Although it is perhaps impossible intellectually to reconcile *Moitie* with established law, it seems proper, absent more direct and fuller consideration of the issue by the Court, to view the result as an aberration....").

[10]The federal anti-injunction statute provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283;  *see also Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).  With regard to duplicative actions in state and federal courts, the Court has remarked,

> "Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court.  Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect

13

not take it on removal.

If there was any federal character at all to the plaintiffs'
state-law claims in *Moitie,* it must be the federal law of
preclusion. In *Moitie,* the plaintiffs filed their state claim only
after their federal statutory claim had gone to federal court
judgment against them. Under traditional federal rules of *res
judicata,* the state-law claim was barred. The plaintiffs chose not
to appeal, but to outflank the effect of the federal district
court's judgment. *See Ultramar America Ltd. v. Dwelle,* 900 F.2d
1412, 1417 (9th Cir.1990). Although we recognize that the state
courts are able and required to apply federal rules of *res
judicata,* the federal law preclusive effect of the federal judgment
could arguably be said to confer a federal character much the way
complete preemption does. In both cases, federal law has in some
sense extinguished the possibility of a state-court cause of
action.[11] *See Sullivan,* 813 F.2d at 1376.

---

> of that judgment is to be determined by the application
> of the principles of res adjudicata.... The rule,
> therefore, has become generally established that ...
> another action for the same cause in another
> jurisdiction is not precluded." *Kline v. Burke Const.
> Co.,* 260 U.S. 226, 228, 43 S.Ct. 79, 81, 67 L.Ed. 226
> (1922).

*See generally* Bator et al., *Hart and Wechsler's The Federal
Courts and the Federal System* 1321 (1988).

[11]We recognize that preclusion is a defense and therefore in
tension with the well-pleaded complaint rule. We also recognize
the institutional competence of the state courts over federal
law. These concerns, many of which are also implicated in the
context of preemption, justify construing *Moitie* narrowly, but
not abandoning it. We are simply without authority to empty
footnote two of all substantive content.

14

We also point out that the existence of a prior federal judgment lifts the statutory bar against enjoining an ongoing state proceeding. There is little practical distinction between, on the one hand, removing and dismissing a precluded state suit and, on the other hand, enjoining one. Under the relitigation exception to the Anti-Injunction Act, the federal courts may enjoin state-court proceedings to protect prior federal judgments. 28 U.S.C. § 2283. Instead of removing, the defendants in *Moitie* might therefore have requested an injunction from the federal court. *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). If issued, an injunction would have had the same effect as removal: the end of state-court proceedings. Because the relitigation exception to the Anti-Injunction Act has already realigned federal-state relations in favor of the federal courts in such an instance, any potential impact on federalism from removal was not significant.

For all these reasons, we hold that *Moitie* should apply only where a plaintiff files a state cause of action completely precluded by a prior federal judgment on a question of federal law.[12]

---

[12]By limiting *Moitie* to those cases in which the plaintiff's state-court action is barred by federal judgment preclusion, we agree with the decision of the Ninth Circuit in *Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368 (9th Cir.), *cert. denied,* 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987). The facts of *Sullivan* are almost identical to those here. In *Sullivan,* the plaintiffs simultaneously filed securities law actions for the same underlying conduct in both federal and state courts. The defendants removed the state action even though the state-court complaint alleged only violations of state securities law. As here, the case came before the appellate court on

Here, there is no prior federal judgment and, consequently, no perceptible federal character to the state claim. Carpenter filed both actions simultaneously. As a result, there is no judgment to protect and no federal preclusion law to apply. Unlike the plaintiffs in *Moitie,* Carpenter is taking preclusion risks in order to have her state law claim heard in its preferred forum; she is not attempting to avoid the effect of a prior judgment. To allow removal in a case such as this would effectively require amending section 1441 at the expense of state autonomy. According to the Supreme Court,

> "The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the

---

interlocutory appeal from the district court's denial of the plaintiff's motion to remand the removed state action to state court. There was no prior federal judgment. In a well-reasoned opinion, the Ninth Circuit construed *Moitie* "as limited to the removal of state claims precluded by a federal judgment." *Id.* at 1376. The Ninth Circuit, of course, was the very court of appeals that had affirmed the district court's removal in *Moitie.*

Our holding is not inconsistent with our earlier decision in *Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust,* 719 F.2d 760 (5th Cir.1983). In *Powers,* this Court ruled unremovable a state-court suit not completely preempted by ERISA, relying on the "powerful doctrine" of the well-pleaded complaint. *Id.* at 764 (quoting *Franchise Tax Board,* 463 U.S. at 8, 103 S.Ct. at 2846). Although some language in the opinion may implicitly suggest a broader interpretation of *Moitie* than we accept here, *see id.* at 766, that language was clearly dicta and is therefore not controlling. Our actual holding in that case, that plaintiff's state-law claim, since not completely preempted by federal law, did not arise under it, is wholly consistent with our decision here.

16

precise limits which the statute has defined.' " *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 107, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) (quoting *Healy v. Ratta,* 292 U.S. 263, 268, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)).

These concerns rebut the School District's argument that the existence of a parallel federal suit should render removable an otherwise unremovable state claim. We simply cannot square the School District's interpretation of section 1441 with the statutory language, which keys the propriety of removal to the existence of original jurisdiction in the district court, not to the presence of a parallel suit there.

Nor can we square this interpretation with the policy of section 1441. The removal statute, like the artful pleading doctrine, is designed to afford defendants a federal forum for their federal claims, not to prevent state judges from hearing a state cause of action. The School District's interpretation turns removal on its head, for by splitting the federal claim from the state claim and pressing the former in federal district court, Carpenter has afforded the School District the very protection intended by a right to removal. *See* Friedenthal, Kane, & Miller, *Civil Procedure* § 2.11 at 57 ("In a case involving a claim raising an issue of federal law, removal equalizes the ability of both parties to have a federal question litigated in its "natural' forum.").

Notwithstanding the language of section 1441, the School District has repeatedly argued that the costs resulting from intercourt claim splitting should justify removal here. This argument again misplaces the inquiry. Nowhere in the removal

17

statute can we locate an efficiency exception. The statute simply does not address issues of judicial economy and litigation management—matters beyond the scope of the statute's language and policy. Furthermore, to complain of the costs arising out of concurrent litigation in separate jurisdictions is to complain generally of federalism, which suffers inefficiencies and multiplicity for its own sake. *See Moses H. Cone Memorial Hospital v. Mercury Const.,* 460 U.S. 1, 13, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983).

We observe in passing that the efficiency concerns are not quite so extensive as the School District would have us believe. For instance, the federal and state courts are equipped to mitigate inefficiencies by coordinating discovery, as was actually done here. Furthermore, although we recognize that concurrent state and federal proceedings are generally tolerated, the federal court may, in the exceptional case, dismiss its proceedings because of a pending state action. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 13-15, 103 S.Ct. 927, 936-37, 74 L.Ed.2d 765 (1983). Likewise, the Texas court, in its discretion, may abate its own proceedings in deference to a parallel suit in another jurisdiction. *See Project Engineering USA v. Gator Hawk,* 833 S.W.2d 716, 724 (Tex.App.—Houston [1st Dist.] 1992, no writ). Finally, once either suit comes to judgment, the other may be barred by *res judicata. Kline v. Burke Const. Co.,* 260 U.S. 226,

18

228, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922); *see, e.g., Hogue v. Royse City, Texas,* 939 F.2d 1249, 1256 (5th Cir.1991) (holding under Texas law that, where state and federal suits were filed separately and simultaneously in state and federal courts, a prior state court judgment precluded the federal claim).[13] If the federal action concludes first, the defendant could raise the defense of claim preclusion in state court or, as mentioned earlier, ask the district court to enjoin prosecution of the state-court proceedings under the relitigation exception to the Anti-Injunction Act. 28 U.S.C. § 2283 (allowing a federal court to enjoin an ongoing state-court proceeding "where necessary ... to protect or effectuate its judgments"); *see Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986) (allowing the injunction where the state court has itself not yet ruled on the *res judicata* issue). In sum, as the Ninth Circuit recognized in *Sullivan,* there are means available to "federal and state courts ... [to] coordinate parallel state and federal litigation without manipulating the removal statute to promote policies beyond its scope." *Sullivan,* 813 F.2d at 1377.

## Conclusion

Because there is no federal character to Carpenter's state suit, the district court lacked subject matter jurisdiction over

---

[13]In *Hogue,* we recognized the risks taken by a plaintiff who simultaneously files suits for the same cause in both state and federal courts: "Hogue took a calculated risk in filing separate suits in what well may have been an attempt to hedge his bets on which forum would be more favorable. Hogue lost that gamble, and cannot now be heard to complain that he has not had his day in court." *Hogue,* 939 F.2d at 1255-56.

19

it.  Accordingly, we reverse the district court's denial of Carpenter's motion to remand, and we remand the case for further action consistent with this opinion.[14]

REVERSED and REMANDED.

---

[14]Carpenter has made a request for costs and attorneys' fees pursuant to section 1447(c).  The decision whether to allow the recovery of costs is committed to the discretion of the district court upon its order to remand the case to state court.  *Id.* Because the district court has evidently not yet addressed this issue, we prefer to leave it for consideration by the district court in the first instance on remand.  *See Miranti v. Lee,* 3 F.3d 925, 928-29 (5th Cir.1993) (addressing the standards to be applied in determining whether to award costs and attorneys' fees under section 1447(c)).