Donald R. JACKSON and Bridget
Jackson, Plaintiffs,

v.

MISSISSIPPI FARM BUREAU MUTUAL
INSURANCE COMPANY; Mississippi
Farm Bureau Casualty Insurance Com-
pany; Jefferson County Farm Bureau,
A.A. L.: and John Smith, Defendants.

No. 3:96CV680LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 27, 1996.

S. Robert Hammond, Jr., Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Hattiesburg, MS, for Plaintiffs.

Charles Greg Copeland, Gregory L. Kennedy, William Matthew Vines, Copeland, Cook, Taylor & Bush, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of plaintiffs Donald R. Jackson and Bridget Jackson pursuant to 28 U.S.C. § 1447 to remand. At the plaintiffs' request and based on the fact of an approaching trial setting for this case in state court, this court directed expedited briefing by the parties. Defendants Mississippi Farm Bureau Mutual Insurance Company, Mississippi Farm Bureau Casualty Insurance Company and Jefferson County Farm Bureau (collectively Farm Bureau), and John Smith have now responded in opposition to plaintiffs' motion and the court, having considered the motion and response thereto, concludes that plaintiffs have asserted a claim in this action arising under federal law, that defendants timely removed upon notice of that claim and that therefore, plaintiffs' motion to remand should be denied.

Plaintiffs, insureds under a policy or policies of insurance issued by the defendant Farm Bureau companies, filed suit in December 1995 alleging entitlement to policy benefits and charging a bad faith refusal by defendants to pay such benefits, for all of which plaintiffs demanded recovery of compensatory and punitive damages. Interrogatories propounded by defendants in February 1996 requested information about the factual basis of the charges in plaintiffs' complaint. Six months later, on August 28, plaintiffs' counsel sent to defendants' counsel via facsimile an unsigned, unfiled draft of plaintiffs' supplemental interrogatory responses, stating, "They are more or less in final form, although additional information may be added." Two weeks later, alleging federal question jurisdiction, 28 U.S.C. § 1331, defendants removed the case to this court on the basis of the following draft responses:

> *Interrogatory No. 14:* Describe in detail each and every separate grossly negligent and willful act and refusal to deal in good faith which you contend occurred as alleged in Paragraphs 13 and 15 of your Complaint:
>
> *Supplemental Response No. 14:*
>
> . . . . .
>
> (4) Farm Bureau intentionally, willfully and as a matter of company policy, has monitored the race of its insureds and has in bad faith used the same against its insureds.
>
> *Interrogatory No. 17:* For each policy provision listed in response to the preceding interrogatory, state specifically why and how you contend that it does not comply with Mississippi law and how such provision relates to your claim:
>
> . . . . .
>
> (5) The Defendants have violated Mississippi Constitution (sic) and the United States Constitution by systematically recording and adjusting claims with its insureds based on race.

Defendants' removal was based on the proposition that plaintiffs' claim of race discrimination was cognizable only under federal law, and specifically 42 U.S.C. §§ 1981 and 1982, since Mississippi law does not recognize a cause of action for race discrimination. *See Davis v. Vesta Fire Ins. Corp.,* No. 3:96CV549LN (S.D.Miss. Aug. 29, 1996). Following removal, plaintiffs filed their motion to remand, and contemporaneously filed a signed, modified version of their interrogatory responses and moved to strike the unsigned, unfiled interrogatory responses which had been appended to defendants' removal papers. The modified responses provide as follows:

*Supplemental Response No. 14:*

. . . . .

(4) Farm Bureau intentionally, willfully and as a matter of company policy, and in violation of its contractual duty of good faith under Mississippi law to its insureds, has monitored the race of its insureds and has in bad faith used the same in evaluation of claims.

*Supplemental Response No. 17:*

. . . . .

(5) The Defendants have violated Mississippi law as to their duty of good faith to their insureds by systematically recording and adjusting claims with their insureds based on race.

In their motion to remand, plaintiffs assert a number of arguments in support of their general position that this case must be remanded because they have never, and do not now allege any claim under federal law. The

court considers each of these arguments in turn.

Plaintiffs' first contention, that their unsigned, unfiled interrogatory response is not a pleading and hence cannot furnish the basis for removal, overlooks the "other paper" language of 28 U.S.C. § 1441(b), which provides that where the case stated by the initial pleading is not removable, then removal may be effected within thirty days after defendants' receipt, "by service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." [1] Interrogatory responses unquestionably may constitute such "other paper," as a number of courts have held, *see, e.g., Van Gosen v. Arcadian Motor Carriers,* 825 F.Supp. 981 (D.Kan. 1993); plaintiffs do not dispute this point. Yet plaintiffs maintain that because the responses were unsigned and unfiled, they cannot be considered to have provided a proper foundation for removal.[2] Consistent with Judge Henry Wingate's recent observation that the modern trend is to view the "other paper" language of § 1441(b) expansively, *Sunburst Bank v. Summit Acceptance Corp.,* 878 F.Supp. 77 (S.D.Miss.1995) (letter from plaintiffs' attorney demanding damages of $50,000 constituted "other paper" for removal on diversity grounds), the court does not consider the fact that the plaintiffs' responses had been neither formally signed or filed as precluding defendants' reliance on them as the basis for removal, particularly given that plaintiffs' counsel voluntarily transmitted the responses to defendants' counsel representing them to be "more or less . . . final."[3]

1. Plaintiffs' initial argument to the court to the effect that "[r]ace could not be a private cause of action creating federal jurisdiction," was obviously incorrect and plaintiffs now appear to concede as much.

2. Plaintiffs point out that the supplemental interrogatory responses which they did ultimately sign and file (contemporaneously with their motion to remand), specifically omitted their unfortunate reference to the "United States Constitution" and thereby omitted any arguable federal claim. This contention is addressed *infra.*

3. In opposition to plaintiffs' motion to remand, defendants argued that even if the interrogatory responses could not be used to support their

removal, deposition questions subsequently posed by plaintiffs to defendants' corporate representatives about whether the race of claimants was recorded on defendants claims forms would furnish a basis for removal. Plaintiffs respond that if the deposition questioning on that topic would support removal, then defendants' removal was untimely since plaintiffs first questioned defendants' representatives on the race issue in June 1996, months prior to the removal. The court concludes, though, that while deposition testimony can give rise to removal, the questioning of defendants' corporate representatives about defendants' policy of recording claimants' races would not have been sufficient to alert defendants to the existence of a federal claim since a claim that the company recorded a claim-

In addition to their procedural objection, plaintiffs argue substantively that even if their draft interrogatory responses constituted "other paper" under § 1441(b), defendants' removal was still improvident since plaintiffs, despite their allusion in those responses to a violation of the "United States Constitution," have not alleged or attempted to allege a federal claim. They note that in an effort to make this fact more clear, the interrogatory responses which they did ultimately file (contemporaneously with their motion to remand) omitted any mention of the United States Constitution; and, they have further specifically stipulated that they have and are pursuing no federal claims.

Initially, the court observes that the issue of whether plaintiffs have presented a federal claim cannot be resolved solely on the basis of whether or not plaintiffs' interrogatory responses actually refer to the United States Constitution. The court recognizes that references to the federal constitution and/or statutes in pleadings or "other paper[s]" may be surplusage and/or may not be intended to and may not have the effect of advancing a federal cause of action. *See, e.g., Bryant v. Mississippi Power & Light Co.,* 722 F.Supp. 298 (S.D.Miss.1989). Contrariwise, plaintiffs may not avoid federal jurisdiction simply by failing to denominate as federal what is in substance a federal claim, i.e., by artful pleading. *See, e.g., Carpenter v. Wichita Falls Indep. School Dist.,* 44 F.3d 362, 366 (5th Cir.1995) ("[I]f the only remedy available to plaintiff is federal ... the case is removable regardless of what is in the pleading."). Thus, accepting plaintiffs' counsel's explanation that his reference to the "United States Constitution" was inadvertent or the result of his "misspeaking" does not alter the court's analysis of the nature of plaintiffs' claim. Nor does the plaintiffs' post-removal omission of that reference to the federal constitution affect the court's analysis of their claim.

On that subject, the plaintiffs, in accordance with this court's recent opinion in *Davis v. Vesta, supra,* appear to acknowledge that a cause of action to which a charge of race discrimination is central, or essential, would necessarily be federal since Mississippi has no civil rights statute comparable to either § 1981 or § 1982 and has not otherwise provided for or recognized a cause of action for race or other types of class-based discrimination. Nevertheless, plaintiffs adamantly maintain that they have asserted no such federal claim and are instead traveling strictly under state law. Theirs, they insist, is not a claim of race discrimination at all but rather a decidedly state law claim for breach of contract with nothing more than a peripheral racial component. They reason that since they are not asserting a federal right as an "essential element" of their case, *see Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and *Willy v. Coastal Corp.,* 855 F.2d 1160, 1165 (5th Cir.1988) (court must "determine federal jurisdiction from only those allegations necessary to state a claim"), then they do not have a federal cause of action to support an exercise of federal jurisdiction. The court concludes otherwise.

In their recently *filed* interrogatory responses, plaintiffs continue to assert, just as before, that "Farm Bureau intentionally, willfully and as a matter of company policy, has monitored the race of its insureds and has in bad faith used the same against its insureds," and that "[t]he Defendants have violated Mississippi law by systematically recording and adjusting claims with its insureds based on race." Yet in describing the factual basis of this charge in their remand memoranda, plaintiffs say only that they have proof, first obtained during discovery, that defendants had a policy of noting the race of their claimants on internal claims forms. This proof, they say, is not essential to their cause of action at all, but is merely evidence to support their claim for the recovery of punitive damages for defendants' alleged tortious breach of contract.

If plaintiffs are seeking to recover punitive damages (or have a jury consider whether to award punitive damages) on the basis that

---

ant's race is not the same as a claim that the company used that information about the claimant's race in evaluating and/or adjusting his claim. The case could only have become removable once plaintiffs made that further assertion in their interrogatory responses.

their race played a role in defendants' claims decision, then plaintiffs are indeed asserting a federal claim, whether or not that wish to so denominate it. *See Davis v. Vesta, supra; Carpenter,* 44 F.3d at 366. In that circumstance, one could only conclude that the race claim was "in the forefront of the case and not collateral, peripheral or remote." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). On the other hand, if plaintiffs were merely seeking to adduce evidence of race (i.e., that defendants had a policy of recording its claimants' races) without further contending or attempting to prove that race was a factor in defendants' decision, then they likely would not have a federal claim. But then neither would their race-based evidence be even marginally relevant or admissible. Therefore, the only logical conclusion is that plaintiffs, as represented in their interrogatory responses (both those that were not filed and those that were), are charging race discrimination in the adjustment and evaluation of their claim for insurance benefits.

■ Plaintiffs point out that they have not alleged a *separate* cause of action for race discrimination, but rather are asserting race discrimination as evidence on their claim of bad faith denial of insurance benefits. They then reason, in their effort to avoid the jurisdictional significance of their allegation of racial discrimination, argue that the fact that defendants were monitoring the race of their own insureds on forms used for claims evaluation is just a "factor" (among others) that a judge could or might admit as evidence on the punitive damages issue and is not essential to their cause of action. This position is untenable. For jurisdictional purposes, it matters not that plaintiffs' allegation of race discrimination is not presented as a "separate" cause of action but rather as part of

their larger claim of bad faith claims denial. What is determinative is whether the allegation of race discrimination is a necessary or essential component of their bad faith claim. And it is. As even plaintiffs recognize, Mississippi law has defined the elements requisite to recovery of punitive damages for failure to pay insurance benefits to include not only proof that the insured is entitled to benefits under the policy, but proof that defendants lacked an arguable reason for refusing payment of those benefits *and proof of heightened tortious acts that are outrageous, indifferent to the rights of their insureds, malicious or intentional.* See, e.g., *Finkelberg v. Luckett,* 608 So.2d 1214, 1220 (Miss. 1992). Given that this is what plaintiffs must prove to secure jury consideration of punitive damages,[4] there is no rational basis for plaintiffs' conclusion that their proof (or asserted proof) of race discrimination, *which they specifically argue constitutes and is admissible as heightened tortious conduct by defendants,* is not an essential element of their case.[5] The fact of the matter is that plaintiffs seek to recover punitive damages in this case based at least in part on race discrimination. Because plaintiffs have made race discrimination an element of their claim, defendants' removal was proper.[6]

■ Plaintiffs submit that even if removal was proper, the case should nonetheless be remanded because, *inter alia,* they have stipulated in their motion to remand that they "have never, nor do they now, allege a [federal] claim" and that "this case is founded solely on Mississippi law." However, plaintiffs may not avoid federal jurisdiction by "stipulating" on the one hand that they are not pursuing a federal cause of action while at the same time continuing to assert what the court has concluded is a federal claim. Plaintiffs' characterization of their claims as

---

4. Under Mississippi law, a plaintiff, even upon proving the elements of a punitive damages claim, is not thereby entitled to receive an award of punitive damages. Rather, that entitles him to have a jury decide, in their discretion, whether to award punitive damages.

5. For these same reasons, plaintiffs' characterization of their race evidence as "evidence of damages" and not essential to their claim is disingenuous.

6. Plaintiffs' attempt to distinguish this case from *Davis v. Vesta,* on the basis that the gravamen of the complaint in *Davis* was race discrimination is unavailing. Just as here, the complaint in *Davis* charged that the defendants' denial of benefits was racially discriminatory and was therefore in bad faith, justifying an award of punitive damages. There is no essential difference in the plaintiffs' claim in the case at bar.

arising solely under state law (or their refusal to correctly denominate the claim as federal) is not controlling. *See Carpenter,* 44 F.3d at 366.

■ Plaintiffs further urge the court to remand based on 28 U.S.C. § 1367(c), which provides:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Although plaintiffs maintain that the court could and should remand on the basis of any or all of these grounds, the court perceives no circumstance that would prescribe or permit remand. Plaintiffs' argument that a novel, if not complex issue of state law is presented because there are "no Mississippi cases specifically holding that [recording a claimant's race on an insurer's internal claims form] is outrageous, insulting, etc.," is without merit. Plaintiffs acknowledge that Mississippi law does not recognize any cause of action for race discrimination—so that is not a complex or novel question. And plaintiffs have further strenuously contended to the court that the only issue on the subject of their race evidence is whether it is admissible as proof of bad faith. This is certainly not a complex issue, and while perhaps novel in the sense that there is no specific Mississippi case on the subject, it is not novel in the sense that it cannot be easily resolved by reference to the rules of evidence and Mississippi's well-settled principles of bad faith law.

Plaintiffs' further contention that § 1367(c)(2) provides a reason for the court to remand flows from their erroneous conclusion that "there are multiple state claims and issues and no federal issues." Similarly,

their reliance on § 1367(c)(3) is unfounded as it presupposes that that no federal claims remain in this action (either because none was ever alleged or because plaintiffs stipulated that none would be pursued).[7]

■ Finally, the court does not find compelling the reasons identified by plaintiff for remand under § 1367(c)(4). The fact that the case is scheduled for trial just weeks from now in state court does not warrant remand of this action. That plaintiffs might avoid removal simply by waiting until the eve of trial before springing their federal claims if this was considered sufficient justification for remand is a point well made by defendants. Furthermore, it is obviously no basis for remand that plaintiffs "never intended a federal claim," particularly since plaintiffs persist in pressing that federal claim. The fact is, while plaintiffs may not have intended that their claim be determined to be a federal claim, they necessarily intended to make the claim. And lastly, plaintiffs' contention that the court ought feel compelled to remand this case because this court might be required to make an *Erie*-guess as to relevant Mississippi law is hardly reasonable.

For the foregoing reasons, the court concludes that it is properly vested with jurisdiction over this cause, that no basis exists for remand and therefore, it is ordered that plaintiffs' motion to remand is denied.

---

7. That fact also distinguishes this case from *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), upon which plaintiffs rely.