Matthews SMITH, et al, Plaintiffs,

v.

TEXACO INC., Texaco Chemical Company and Star Enterprise, Inc., Defendants.

No. 1:96–CV–0749.

United States District Court, E.D. Texas, Beaumont Division.

Jan. 2, 1997.

James Erick Payne, Provost & Umphrey, Beaumont, TX, for Plaintiffs.

Stephen Fred Fink, Thompson & Knight, Dallas, TX and Paul W. Gertz, Germer & Gertz, Beaumont, TX, for Defendant Texaco, Inc.

V. Scott Kneese, Bracewell & Patterson, Houston, TX and Robert J. Hambright, Orgain, Bell & Tucker, Beaumont, TX, for Star Enterprise.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is Plaintiff Matthews Smith's (Smith) motion seeking to remand this case to state court, and defendants' Texaco, Inc. (Texaco) and Star Enterprise, Inc.

(Star Enterprise) motions seeking to dissolve the temporary restraining order (TRO) previously entered by the state district court in this removal action pursuant to Fed.R.Civ.P. 65(b) and to deny a temporary injunction.

The court has conducted a preliminary injunction hearing and reviewed the parties' written submissions and oral arguments. For the reasons given below, both the plaintiff's and the defendants' motions will be denied.

### Background

Plaintiff Smith is employed by the Human Resources Department at the Port Arthur, Texas refinery operated by Star Enterprise, previously owned by Texaco. On December 6, 1996, Smith obtained a TRO from state court, which enjoined defendants from moving, altering or deleting any records which might pertain to Smith's (personal and as an anticipated class representative) claims of employment discrimination against Star Enterprise (and possibly Texaco).

Star Enterprise was formed as a joint venture under New York partnership law on January 1, 1989. Star Enterprise is owned 50% by an indirect subsidiary of Texaco and 50% by Saudi Refining, Inc.

The state court TRO pertains to Texaco because Texaco shares all employee performance and appraisal records with Star Enterprise to determine seniority or when employees chose to switch employment between these two companies. This occurs with some regularity, but not on a scheduled basis.

Specifically, Smith alleges that Star Enterprise's facially neutral employee appraisal and promotion system discriminates against him and other African–American employees. At the preliminary injunction hearing held before this court, it was determined that of about 50 people at Star Enterprise's nationwide human resources group only 1 or 2 are African–Americans. The evidence also showed that while between 17 to 21 people worked in Star Enterprise's Port Arthur facility's Human Resources Department, Smith was the only African–American in that department since 1984. Despite having high qualifications, a Master's Degree in Public Administration with an emphasis in Budgeting and Personnel Services, Smith was the only employee in the Star Enterprise's Port Arthur facility's Human Resources Department who has not been promoted since 1985, a period of 11 years. Other persons who are caucasian, but with less educational background and with less seniority have been promoted, received raises, and given supervisory positions during those 11 years. But not Smith.

The evidence also showed that even as the state court issued its TRO on December 6, 1996, Star Enterprise attempted to move certain files from the "Old Records Room" in the Port Arthur plant to Tulsa, Oklahoma. The record indicates that but for Smith's efforts to enforce the TRO, Star Enterprise would have moved out of Texas to a Texaco records storage facility in Tulsa, Oklahoma certain employment records, possibly essential for making Smith's case, and certainly relevant to the claim or the defense. Texaco has the exclusive control of the Tulsa records center.

### Discussion

#### 1. This Case was Properly Removed to Federal Court

A defendant may remove a state court action to federal court if such an action could have been filed in the federal court originally. 28 U.S.C. § 1441; *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1160–1161 (5th Cir.1989). When, as in the present case, there is no diversity jurisdiction, a federal question must appear on the face of the plaintiff's "well-pleaded complaint" for removal to be proper. *Id.; see also Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995) ("A defendant . . . must show that a federal right is an element, and an essential one, of the plaintiff's cause of action.") (citations omitted). The general rule, thus, is that a federal defense to a state law claim does not create removal jurisdiction. *Aaron*, 876 F.2d at 1161.

In the present case, the plaintiff's pleading in the state court action, on its face, asserts an essentially federal claim. (See Appendix) The relevant portion of the plaintiff's pleading alleges:

Defendants have engaged and are continuing to engage in unfair and racially motivated discriminatory practices against Plaintiff and other African–American employees of Star Enterprise. There are discriminatory practices and policies at Defendants' facilities that determine promotions, advancement opportunities and compensation which **apply Company-wide throughout the United States.** The specific practice includes "facially-neutral" decision-making systems that, in their application, have a disproportionate adverse impact on African–American employees.

Plaintiff's Application for Temporary Restraining Order at III (emphasis added).

■ Defendants properly point out that the above-quoted allegation states a cause of action which is exclusively federal in nature. 42 U.S.C. § 1981 makes it unlawful for an employer to discriminate on the basis of race in promotion and wage decisions. *Page v. U.S. Industries,* 726 F.2d 1038 (5th Cir.1984); *Boykin v. Georgia–Pacific Corp.,* 706 F.2d 1384 (5th Cir.1983). A prima facie case of such racial discrimination may be shown by demonstrating that African–Americans are "disparately impacted" by the employer's wage and promotion policies; that is, "Where gross statistical disparities can be shown, they alone may ... constitute prima facie proof of a pattern or practice of discrimination."[1] *Boykin,* 706 F.2d at 1390 (quoting *Hazelwood School Dist. v. United States,* 433 U.S. 299, 307–08, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977)).

Indeed, when the plaintiff alleges that Star Enterprise's promotion policies where determined by:

'facially-neutral' decision-making systems that, in their application, have a disproportionate adverse impact on African–American employees,

he conforms perfectly to the Fifth Circuit's requirements for pleading the issue of disparate impact under section 1981:

A prima facie case of disparate impact must be shown by identification of a neutral employment practice coupled with proof of its discriminatory impact on one class of employees in the employer's workforce.

*Page,* 726 F.2d at 1053 (emphasis added). Accordingly, a section 1981 claim is clearly discernable from the face of the plaintiff's pleadings.

While the plaintiff argues that there is no federal question jurisdiction because an employment discrimination case may be brought under the Texas Commission on Human Rights Act (TCHRA), Tex.Lab.Code Ann. §§ 21.001 et seq., it is fatal to his argument that he alleges that Star Enterprise's discrimination practices were "**Company-wide throughout the United States,**"[2] while TCHRA pertains to Texas employers only. Tex.Lab.Code Ann. §§ 21.001. Thus, a federal question, specifically a section 1981 claim, necessarily appears on the face of the plaintiff's pleading. Therefore, the plaintiff's Motion to Remand is in all things denied.

**2. Preliminary Injunction**

This court may grant a preliminary injunction if: "(1) the movant has a substantial likelihood of eventual success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs the damage

---

[1] This court is aware that Title VII also prohibits discrimination in employment on the basis of race. *See* 42 U.S.C. § 2000e. However, Title VII establishes an administrative procedure—i) file timely charge with the EEOC; ii) receive notice of right to sue—which a complaining employee must follow before filing a lawsuit in federal court. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); 42 U.S.C. § 2000e–5(b), (c), (e). Because the plaintiff failed to plead the procedural prerequisites for a federal lawsuit under Title VII, this court cannot construe a plausible federal question over this lawsuit under Title VII.

However, a disparate impact claim may be made under section 1981 even if such a claim may not be brought pursuant to Title VII. *Page v. U.S. Industries, Inc.,* 726 F.2d 1038, 1041 n. 2 (5th Cir.1984).

[2] During a hearing before this court the plaintiff has alleged that such discriminatory practices may occur not merely in Port Arthur, Texas, but also at Star Enterprise's refineries in Delaware City, Delaware, and Convent, Louisiana, and in Star Enterprise's principal marketing facility in Atlanta, Georgia.

which the injunction may cause the opponent; and (4) the injunction would not be adverse to the public interest." *Productos Carnic, S.A. v. Cent. Am. Beef, Etc.*, 621 F.2d 683 (5th Cir.1980).

### a. Success on the Merits.

■■■ The court finds that the evidence presented at the hearing on December 20, 1996 shows that the plaintiff met his burden of showing a likelihood of success on the merits. Statistical evidence may be used to prove that a subjective promotional system has a classwide discriminatory impact. *Page,* 726 F.2d at 1046–1047. This court finds it startling that of at least 50 people in Star Enterprise's nationwide human resources group only one or possibly two are African–Americans. Though there were between 17 to 21 people in the Star Enterprise's Port Arthur facility's Human Resources Department, Smith was the only African–American to work in that department since 1984. Despite having high qualifications, a Master's Degree in Public Administration with an emphasis in Budgeting and Personnel Services, Smith, who is forty-two was the only employee in the Star Enterprise's Port Arthur facility's Human Resources Department who has not been promoted since 1985, a period of 11 years.[3] At the very least, this court is persuaded that there is a substantial likelihood that Smith will succeed on the merits were he to bring a section 1981 claim.

### b. Irreparable Injury.

The evidence before this court indicates that on December 6, 1996, or the day on which the state court issued its TRO, Star Enterprise has attempted to move certain files from its "Old Records Room" in the Port Arthur refinery to Tulsa, Oklahoma for storage in the Texaco records center. The evidence shows that the files which Star Enterprises attempted to move might have been essential for making the plaintiff's case. It is also clear that but for Smith notifying Star Enterprise of the state court's TRO, documents which could prove his case would have been removed from Port Arthur, Texas. If any documents relevant to the plaintiff's discrimination claim are removed, destroyed, or altered, the plaintiff and the class he anticipates he will represent will likely suffer irreparable harm in proving their racial discrimination claim.

### c. Balancing the Equities.

Defendants argue that compliance with the injunction might cause more harm than good, viz. disruption of ordinary business activity. To accommodate the defendants' concerns, the court will modify the original state court TRO to permit the moving of certain documents, and certain notations concerning payroll, if doing so is in the ordinary and usual course of the defendants' business; provided, however, that the plaintiffs' rights to inspect documents relevant to their race discrimination case shall not be impaired. Moreover, to mitigate the high costs associated with electronic document storage, the court will permit defendants to delete electronic records in the ordinary and usual course of business; provided, however, that hard copy records be made and kept of any and all electronic records of the various Human Resources records, as well as any new data used to report various actions, and the status of employees to any governmental authority, state local, or federal, if the defendants choose to delete such records. With such modifications, the threat of harm to the plaintiffs outweighs any harm to the defendants which the injunction might cause.

### d. Public Policy.

Sound public policy abhors racial discrimination in employment promotions. Indeed, such discrimination is insidious, and violates our sense of human decency. Accordingly, an injunction which would enable the plaintiff to litigate fully and adequately his race discrimination claim fosters sound public policy.

### Conclusion

For the reasons given above, the plaintiffs' Motion to Remand is in all things denied and

---

**3.** Even if *Brown v. Board of Education*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) (decided when the plaintiff was an infant), had eradicated race discrimination once and for all (wishful thinking) this court cannot help but wonder that given the evidence before it whether Smith, 42, could possibly assert a cognizable claim of age discrimination.

the defendants' Motions to Dissolve the Temporary Restraining Order and Deny a Temporary Injunction are denied.

## APPENDIX

*42 U.S.C. § 1981. Equal rights under the law*

(a) Statement of equal rights

**All persons** within the jurisdiction of the United States shall have the **same right in every State and Territory to make and enforce contracts** ... and to the **full and equal benefit** of all laws and proceedings for the security of persons and property as is **enjoyed by white citizens** ...

(b) "Make and enforce contracts" defined

For purposes of this section, the term "**make and enforce contracts**" includes the **making, performance, modification, and termination of contracts,** and the **enjoyment of all benefits, privileges, terms, and conditions of contractual relationship.**

(c) Protection against impairment

**The rights protected** by this section are protected **against impairment by nongovernmental discrimination** and impairment under color of State law.

*Paragraph III of Plaintiff's Petition*

Defendants have engaged and are continuing to engage in **unfair and racially motivated discriminatory practices against Plaintiff and other African–American employees of Star Enterprise.** There are **discriminatory practices** and policies at Defendants' facilities that **determine promotions, advancement opportunities and compensation** which apply Company-wide **throughout the United States.** The specific practice includes "facially-neutral" decision-making systems that, in their application, have a disproportionate **adverse impact on African–American employees.** More specifically Plaintiff, Matthews Smith has been subjected to discriminatory practices and policies in Defendants' evaluation system, job posting, compensation/pay-grade systems and promotions. By using these discriminatory practices and policies, Defendants have engaged in a **pattern and practice of inten-**tional discrimination against Plaintiff and other African–American employees of Star Enterprise.