EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel R. ("Manny") Suarez Jiménez; y Otros<br><br>     Demandantes-Peticionarios<br><br>v.<br><br>Comisión Estatal de Elecciones y Otros<br><br>     Demandados-Recurridos | Certificación<br><br>2004 TSPR 182<br><br>163 DPR _____ |

Número del Caso: CT-2004-4

Fecha: 23 de noviembre de 2004
(Voto Suplementario del Juez Asociado señor Fuster Berlingeri y Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez)


Tribunal de Primera Instancia
Sala Superior de San Juan


Abogada de la Parte Peticionaria:

       Lcda. María Soledad Piñeiro


Abogados de la Parte Recurrida:

       Lcdo. Pedro Delgado
       Lcdo. Luis F. Estrella Martínez
       Lcdo. Gerardo de Jesús Annoni
       Lcdo. Juan Dalmau
       Lcdo. Thomas Rivera Schatz
       Lcdo. Pedro E. Ortiz Álvarez
       Lcda. Gina R. Méndez Miró
       Lcda. Johanna M. Emmanuelli Huertas
       Lcdo. José A. Carlo Rodríguez
       Lcdo. José E. Meléndez Ortiz, Jr.
       Lcdo. Alberto Rodríguez Ramos


Materia: Solicitud de Certificación de Recurso ante el Tribunal de Primera Instancia, Sala de San Juan


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel R. ("Manny") Suárez
Jiménez; y Otros

    Demandantes-Peticionarios

        vs.                  CT-2004-4        Certificación

Comisión Estatal de Elecciones
y Otros

    Demandados-Recurridos

Voto Suplementario del Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 23 de noviembre de 2004.

I

    Aprovecho la ocasión de que el Juez Asociado señor Rivera Pérez ha formulado su posición en el caso de autos, para **ampliar** lo que señalé el 20 de noviembre de 2004 en una nota al calce de mi opinión de conformidad sobre el asunto de la solicitud de **traslado** de este caso al foro federal, presentado por el Comisionado Electoral de Partido Nuevo Progresista (PNP). Ello, conforme a los dispuesto en la Regla 5(b) del Reglamento del Tribunal Supremo de Puerto Rico sobre casos en que ya se ha emitido una decisión.

    El punto de partida para la consideración seria de este asunto es el hecho **incontestable** de que la

autoridad máxima para interpretar las leyes electorales del país es el Tribunal Supremo de Puerto Rico. P.S.P. v. Comisión Estatal de Elecciones II, 110 D.P.R. 538 (1980). Esta incuestionable autoridad nuestra ha sido expresamente reconocida por el propio Tribunal Supremo de Estados Unidos. Rodríguez v. Popular Democratic Party, 457 US 1 (1982). Véase, además, Bonet v. Texas Company, Inc., 308 US 463 (1940).

Una de las consecuencias del hecho jurisdiccional señalado en el párrafo anterior es que cuando un tribunal federal tiene ante sí algún caso que le requiere considerar alguna ley o reglamento del Estado Libre Asociado de Puerto Rico, ese tribunal federal **viene obligado** a seguir las interpretaciones del Tribunal Supremo de Puerto Rico sobre tal ley o reglamento. **El tribunal federal no puede hacer su propia interpretación de dichas normas de Puerto Rico**, sino que tiene que proceder exactamente como lo hubiera hecho el Tribunal Supremo de Puerto Rico, de haber tenido éste el caso ante su consideración. Este principio de derecho federal ha sido pronunciado por el Tribunal Supremo de Estados Unidos en docenas de ocasiones y es uno de los puntales fundamentales del federalismo. En una época incluso se decía por los comentaristas que como en cuanto a las normas de derecho estatales, los tribunales federales estaban obligados a actuar como si fueran sólo otro tribunal estatal, dichos tribunales federales tenían un rol en tales casos de **"muñecos de ventrílocuo"**. Todo esto es bien conocido por aquellos que han estudiado cabalmente lo referente a la jurisdicción federal.

¿Qué sucede entonces si el tribunal federal tiene ante sí una ley de Puerto Rico que **no ha sido interpretada antes por el Tribunal Supremo de Puerto Rico**? ¿Qué debe hacer en esa situación

el tribunal federal? La respuesta más propia a esta interrogante es que si la ley de Puerto Rico trata sobre asuntos de alto interés público, el tribunal federal **debe abstenerse de interpretar la ley** y debe entonces **referírsela al Tribunal Supremo de Puerto Rico para que sea éste quien la interprete**. Esto es lo que se conoce como **certificar** el asunto al Tribunal Supremo de Puerto Rico.

En el asunto de los votos mixtos que dio lugar al caso de autos, es de conocimiento público que al menos una de las partes le solicitó al tribunal federal que certificase dicho asunto al Tribunal Supremo de Puerto Rico, como era procedente. Sin embargo, para sorpresa de muchos, **el tribunal federal se negó a hacer la certificación debida**. La endeble excusa que dio para no cumplir con su claro deber de certificar el asunto al Tribunal Supremo de Puerto Rico fue que al Tribunal Supremo no le gustaba que le certificaran tales casos!!! Tal excusa es insostenible. Nótese, en primer lugar, que el propio Reglamento del Tribunal Supremo, dispone como atender las certificaciones de los tribunales federales. La Regla 25 de nuestro Reglamento establece un procedimiento especial para las certificaciones interjurisdiccionales. No existiría tal Regla si fuese cierto que no nos interesa atender tales certificaciones. Más aun, la excusa es enteramente contraria a acciones recientes de ese tribunal. Hace sólo unos meses atrás, el tribunal federal le certificó al Tribunal Supremo unas cuestiones sobre las leyes de Puerto Rico en el caso de Guzmán Vargas v. Sila Calderón, CT-2003-2, y nosotros aceptamos la certificación. Así ha sucedido varias veces en el pasado. Es por lo anterior que el tribunal federal debió cumplir con su deber y certificarnos la cuestión de los votos mixtos, y si nosotros no la aceptábamos, entonces, y sólo entonces podía decir con razón que el

Tribunal Supremo no le interesaba hacer la interpretación de la Ley Electoral de Puerto Rico.

Es con este trasfondo que debe examinarse a fondo ahora el asunto del traslado en el caso de autos. Dicho caso viene a nos precisamente porque el tribunal federal se negó a cumplir con su deber de referirnos el asunto del voto mixto para nuestra interpretación. **El tribunal federal fue quien actuó primero en un insólito intento por impedirle al Tribunal Supremo de Puerto Rico cumplir con su función esencial y exclusiva de ser el interprete final de las leyes de Puerto Rico**.

Como si lo anterior no fuese ya suficientemente grave, cuando el caso de autos viene ante nos, el Comisionado Electoral del PNP intentó entonces privarnos de nuestra jurisdicción en ese caso, con una solicitud de traslado **a todas luces ilegal e improcedente**. Otra vez se intentaba impedirle a este Foro cumplir con su función constitucional esencial y exclusiva, esta vez con una burda moción de traslado que no cumple con los más elementales requisitos del derecho federal.

La moción de traslado referida contiene los siguientes defectos fundamentales. En primer lugar, la moción de traslado en cuestión **no fue suscrita por todos los demandados en el caso de autos**. Cualquier estudiante de primer año de derecho sabe que las mociones de traslado para ser válidas tienen que ser solicitadas por **todos** los demandados de un caso. Uno sólo de ellos no puede hacerlo por su cuenta. En este caso no solicitaron el traslado en cuestión ni la Comisión Estatal de Elecciones, ni los comisionados electorales del Partido Popular Democrático y del Partido Independentista Puertorriqueño, que eran también partes demandadas en el caso. **No procedía, pues, el traslado**. En efecto, el propio Tribunal Supremo

de Estados Unidos aprobó en un caso que el Tribunal Supremo del estado de Kansas denegara una petición de traslado porque no se unieron todos los demandados a la solicitud, tal como sucedió en el caso de autos. Nuestra postura, pues, está avalada por el propio Tribunal Supremo federal. Véase, Chicago R. I. v. Martin, 178 US 245 (1900); véase, además, Gableman v. Peoria, 179 US 335 (1900).

En segundo lugar, la petición de traslado en cuestión era fatalmente defectuosa porque en el caso de autos, los **demandantes**, que son los promoventes de la acción, se ampararon solamente en las leyes de Puerto Rico. No existía ninguna cuestión federal planteada por ellos. No había, pues, base alguna que le diera jurisdicción al tribunal federal. Aun asumiendo que los demandados tuviesen una **defensa federal** que presentar a la acción de los demandantes, es un principio básico harto conocido que las **defensas federales no pueden dar jurisdicción a un tribunal federal en casos de traslado**. Lo ha resuelto así el propio Tribunal Supremo de Estados Unidos en múltiples ocasiones, y también del mismo modo hasta el mismo tribunal federal de Puerto Rico. Oklahoma Tax Comm'n v. Graham, 489 US 838 (1989); Franchise Tax Bd. v. Construction Laborers, 463 US 1 (1983); Gully v. First Nat. Bank, 299 US 109 (1936); Arkansas v. Kansas, 183 US 185 (1901); Hernández Agosto v. Romero Barceló, 748 F2d 1 (1984). **No era válida, pues, la moción de traslado.**

Finalmente, la moción de traslado del Comisionado del Partido Nuevo Progresista en el caso de autos tenía otro defecto fatal. Dicha moción se presentó **tardíamente**, en una etapa de los procedimientos que la hacía **totalmente inválida**. En efecto, la jurisprudencia federal es meridianamente clara en que si un demandado no pide el traslado de un caso a tiempo, y continúa participando en el mismo en el tribunal estatal, por sus actos ese

demandado **renuncia** a su derecho a solicitar el traslado. Cantrell v. Great Republic Ins. Co., 872 F2d 1249 (1989); Texas Wool & Mohair v. Standard Ins. Co., 175 F2d 385 (1949); Zbranek v. Hofheinz, 727 Fed. Supp. 324 (1989). En el caso de autos, el Comisionado del Partido Nuevo Progresista participó en el pleito activamente hasta que logró precisamente lo que había solicitado: que el tribunal de instancia, Sala Superior de San Juan, **desestimara la demanda en su contra**; es decir, participó desde el comienzo hasta el final del procedimiento en el foro de instancia. En vista de ello, renunció a su derecho a pedir el traslado. Estaba absolutamente impedido de hacerlo. Custom Blending v. E.I. Dupont, 958 F. Supp. 288 (1997); Kam Hon v. Cigna Fire Underwriters, 933 F. Supp. 1060 (1996); Zilinge v. Allied Am Ins. Co., 957 F. Supp. 148 (1997); Thorp Fin. Corp. v. Lehrer, 587 F. Supp. 533 (1984). Los tribunales federales consideran tales  solicitudes de traslado como "*patently improper*" Ibid. Y los renombrados comentaristas sobre el derecho relativo a la jurisdicción federal, los profesores Wright, Miller y Cooper han señalado que:

> "A case may not be removed from a state to a federal
> court after the state court enters a final
> judgement that terminates the litigation."

14B *Federal Practice And Procedure*, pág. 307 (1998).


En resumen, pues, la solicitud de traslado del caso de autos no tenía fundamento válido alguno; era una solicitud **nula**, presentada obviamente en un intento burdo de evitar nuestra jurisdicción. La petición de traslado referido no respondía al propósito legítimo de tales  peticiones, sino a un fin ilícito, que la propia jurisprudencia federal ha repudiado. Véase, Carpenter v. Wichita Falls Independent School Dist., 44 F. 3 d 362 (1995).  No podía

este Tribunal faltarse el respeto a sí mismo y darle curso a una solicitud tan obviamente improcedente, que sólo pretendía obstruir la jurisdicción constitucional de este Foro.

Los tribunales de Puerto Rico han respetado siempre las disposiciones del estatuto federal sobre traslado y deben continuar haciéndolo. **<u>Dicho estatuto nos obliga sin lugar a duda alguna</u>**. Pero en el caso de autos sólo existía una moción de traslado nula. La cuestión no es si dicha moción tuviera méritos o no, sino que era nula de toda nulidad, por las razones ya explicadas. Se trataba, pues, de una situación *sui generis*, en la que este Tribunal tenía que actuar como lo hicimos: en vista de su nulidad, la dimos como no presentada. Nuestra actuación no pretendió menoscabar de modo alguno la legítima autoridad del foro federal. Sólo procuró defender la integridad de este Tribunal y su jurisdicción.

Procede que se **<u>cuenten y adjudiquen</u>** los votos mixtos en cuestión, tal y como lo ordenamos en nuestro dictamen.


                                        JAIME B. FUSTER BERLINGERI
                                        JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Manuel R. ("Manny") Suárez Jiménez; Enid Abreu Zurianga; José A. Álvarez Febles; Liany Fernández Toledo<br>          Peticionarios<br><br>                    v.<br><br>Comisión Estatal de Elecciones; Aurelio Gracia, Presidente; Thomas Rivera Schatz, Comisionado Electoral PNP; Juan Dalmau, Comisionado Electoral PIP; Gerardo Cruz, Comisionado Electoral del PPD; Partido Nuevo Progresista; Pedro Roselló González<br>          Recurridos | CT-04-004 | Solicitud de Certificación |

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR RIVERA PEREZ.

San Juan, Puerto Rico, a 23 de noviembre de 2004.

La Mayoría expidió el recurso de certificación solicitado y asumió jurisdicción en este asunto y certificó Opinión Per Curiam y Sentencia el 20 de noviembre de 2004, en horas de la noche, a pesar, de haber sido presentado el 20 de noviembre de 2004 a las once y cuarenta y ocho minutos de la mañana (11:48 a.m.) ante este Tribunal notificación sobre "Notice of Removal", presentado en el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico que tuvo el propósito de trasladar el presente caso de este Tribunal y depositarlo en la jurisdicción

del foro federal.    La notificación de traslado de un    caso pendiente ante el    foro judicial local queda sujeta al foro judicial federal y no al local.    La Mayoría actuó en claro menosprecio de los dispuesto en 28 U.S.C.A. sec. 1446(d), estatuto federal que regula los referidos procedimientos, y que dispone sobre una paralización automática de los procedimientos estatales una vez radicada la notificación de traslado en el tribunal federal y sea debidamente notificada al foro estatal.    La Mayoría actuó sin jurisdicción, abrogándose la facultad del foro federal en cuanto a la procedencia del "Notice of Removal".

El Tribunal de Apelaciones de Estados Unidos, Primer Circuito de Boston ha resuelto que cualquier orden, resolución o sentencia dictada por un tribunal estatal en un caso civil es nula cuando la misma ha sido certificada después que el asunto ha sido trasladado al tribunal federal, a tenor con 28 U.S.C.A. sec. 1446(d); estatuto federal que regula dichos procedimientos[1].    Toda orden, resolución o sentencia emitida por un tribunal estatal en un caso civil es nula ab initio después de ser presentado un "Notice of Removal" ante el tribunal federal, debidamente notificado al tribunal estatal, a tenor con el mencionado estatuto federal, aunque eventualmente el foro federal declare como improcedente el referido traslado.[2]

Quiero hacer claro, como cuestión de umbral, que DISIENTO de lo actuado por la Mayoría porque entiendo que la jurisdicción sobre el presente asunto la tiene el tribunal federal desde que se presentó

---

[1] Sweeney v. Resolution Trust Corporation, 16 F.3d 1 C.A.1. Mass, (1994); Hernández López v. Commonwealth of P.R., 30 F. Supp. 2d 205, éste ultimo resuelto por el Tribunal de Distrito de Estados Unidos por el Distrito de Puerto Rico.

[2] Hyde Park Partners, L.P. v. Connolly, 839 F. 2d 837 C.A.1. Mass. (1988).

el "Notice of Removal" ante ese foro, debidamente notificado a este Tribunal. A pesar de que entiendo que este Tribunal no tiene jurisdicción, por imperativo de la Regla 5(b) de nuestro Reglamento, me veo en la obligación de vertir mi criterio sobre los méritos de lo aquí planteado, en vista de que estoy limitado por un término de diez (10) días para expresarme con relación a la Opinión Per Curiam y Sentencia ya certificada a partir del día de su certificación, o sea del 20 de noviembre de 2004[3].

No contamos en nuestro expediente con **copia de una sentencia escrita, emitida por el Tribunal de Primera Instancia ni con copia de los emplazamientos diligenciados sobre las personas de todos los demandados de autos, aquí recurridos.**

El 19 de noviembre de 2004 la Mayoría le concedió a los recurridos ante nos, hasta las tres de la tarde (3:00 p.m.), escasamente tres (3) horas, para expresarse sobre la "Solicitud de Certificación y Moción de Remedios Urgentes en Auxilio de Jurisdicción", presentada por los peticionarios ante este Tribunal el 18 de noviembre de 2004 a la una y cincuenta y siete de la tarde (1:57 p.m.) y recibida por el que subscribe a las tres y

---

[3] La Regla 5(b), supra, en lo pertinente, dispone lo siguiente:

Los(as) Jueces sólo podrán reservarse el derecho a emitir una ponencia luego de que se haya certificado una decisión del Tribunal cuando, por la naturaleza del asunto implicado, la mayoría del Tribunal haya decidido acortar los términos aquí establecidos. **En estas circunstancias, el(la) Juez que se haya reservado este derecho deberá circular su ponencia dentro del término de diez (10) días contados a partir de la fecha en que se haya notificado dicha reserva.** Los(as) otros(as) Jueces tendrán un término adicional de cinco (5) días para expresar su posición sobre la ponencia descrita anteriormente. Simultáneamente concluidos estos términos, se certificarán todas las ponencias o expresiones y, desde ese momento, no se certificará ninguna otra ponencia o expresión sobre el caso.

veinte de la tarde (3:20 p.m.).[4] El 19 de noviembre de 2004 a las dos y treinta y nueve minutos de la tarde (2:39 p.m.) el Comisionado Electoral del Partido Nuevo Progresista solicitó una prorroga para expresarse sobre el recurso de certificación solicitado ante nos. Arguyó que no contaba con copia del recurso de certificación. Que se le notificó copia de la Orden de este Tribunal pero no se le proveyó copia del referido recurso. El abogado del Comisionado Electoral del Partido Nuevo Progresista alega haber estado participando activa y extensamente asesorando a su cliente durante el día feriado, viernes 19 de noviembre de 2004, en los asuntos relacionados con el proceso de escrutinio en San Juan. Por ello, alega, que la preparación del escrito para comparecer ante este Tribunal y expresarse se complica aún más. Solicitó hasta el próximo lunes 22 de noviembre de 2004 a las cinco de la tarde (5:00 p.m) para presentar su escrito. El 19 de noviembre de 2004 a las tres y treinta y nueve de la tarde (3:39 p.m.) el Presidente de la Comisión Estatal de Elecciones presentó moción de prórroga para expresarse sobre el referido recurso. Solicitó hasta el sábado 20 de noviembre de 2004 a las tres de la tarde (3:00 p.m.) para comparecer por escrito. Arguye que a las tres de la tarde (3:00  p.m.) del viernes 19 de noviembre de 2004 el Hon. Aurelio Gracia estaba testificando en la vista evidenciaria que se está celebrando ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico, y por ende le resultaba imposible cumplir con el término original pautado por este Tribunal (3:00 p.m. del día feriado, viernes 19 de noviembre

---

[4] Ese día viernes 18 de noviembre de 2004 el sistema electrónico de investigación jurídica que tenemos disponibles los Jueces Asociados en nuestra oficinas no estaba funcionando.

de 2004). La Mayoría le concedió una prórroga hasta las doce del medio día (12:00 p.m.) del sábado 20 de noviembre de 2004 a la Comisión Estatal de Elecciones y al Comisionado Electoral del Partido Nuevo Progresista para expresarse por escrito.[5]

Algunas de las partes demandadas de autos y aquí recurridas, durante el trámite que se estaba realizando en este tribunal los días viernes 19 y sábado 20 de noviembre de 2004, se encontraban participando activamente en los procedimientos en los asuntos relacionados con el proceso de escrutinio en San Juan y en una vista evidenciaria pautada para los mismos días y hora en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, Sala del Honorable Daniel Domínguez, Juez. Concluimos que dadas las circunstancias presentes los términos concedidos a las partes recurridas para comparecer ante este Tribunal fueron irrazonables e insuficientes para que esas partes pudieran expresarse en forma informada y responsable a este Tribunal. La Mayoría actuó en forma atropellante con esas partes. El derecho constitucional a un debido proceso de ley no es una mera formalidad. Es una garantía real y tiene que protegerse en forma efectiva. La Mayoría revocó al Tribunal de Primera Instancia que, según afirmó, desestimó la demanda de autos, sin contar con copia escrita de la sentencia emitida por ese tribunal para evaluar los

---

[5] Disentimos de tal curso de acción; expresamos que le hubiéramos concedido al Comisionado Electoral del Partido Nuevo Progresista hasta el lunes 22 de noviembre de 2004 a las cinco de la tarde (5:00 p.m.). La moción de prorroga del Presidente de la Comisión Estatal de Elecciones se nos entregó después de certificada la Resolución de la Mayoría concediéndole a ambos hasta el sábado 20 de noviembre de 2004 a las doce del mediodía (12:00 m.). No pudimos evaluarla antes a los efectos de emitir nuestro criterio sobre la misma. Nos enteramos de que se había certificado tal Resolución, y de la existencia de la referida moción del Presidente de la Comisión Estatal de Elecciones por los medios de comunicación que difundieron una conferencia de prensa ofrecida por uno de los miembros de este Tribunal.

fundamentos que lo llevaron a concluir sobre la desestimación de la demanda de autos. No devolvió el caso al foro primario para el inicio de los procedimientos de primera instancia y la eventual celebración de una vista evidenciaria. Evaluó los méritos de lo planteado por los demandantes de autos al tribunal a quo y no, lo que era procedente, la decisión recurrida de desestimar la demanda. Actuó sin contar con un récord, ni con la presentación por la parte demandante de prueba admitida por el Tribunal de Primera Instancia, para sostener sus alegaciones. Concluimos que todo este curso de acción tomado por la Mayoría resulta improcedente como cuestión de derecho y es crasamente violatorio a la garantía de los recurridos a un debido proceso de ley, al amparo de la Constitución de los Estados Unidos y de Puerto Rico.

El 19 de noviembre de 2004 a las cuatro y treinta y nueve de la tarde (4:39 p.m.) el Comisionado Electoral del Partido Popular Democrático presentó ante nos escrito titulado "Comparecencia del Comisionado Electoral del Partido Popular Democrático".[6] Dicha parte alega que **los demandantes de autos han sido víctimas de argumentos frívolos e injustificados que contradicen principios básicos del derecho electoral puertorriqueño. Afirma que las comparecencias en la Corte Federal en el caso federal núm. 04-2251 (DRD) así lo demuestran.** Dicha parte expresa, en su escrito lo siguiente:

> Los demandantes federales reconocen que la CEE, la entidad que el Estado Libre Asociado ha investido con el

---

[6] Copia de dicho documento se nos entregó el 20 de noviembre de 2004 a las nueve y cuarenta y tres minutos de la mañana (9:43 a.m.). La premura, urgencia y celeridad a que fue sometido este proceso por la Mayoría no se aplicó a la entrega de copia de ese documento a éste Juez el día 20 de noviembre de 2004 que estuvo en su oficina hasta horas de la noche, y disponible en su residencia posteriormente para atender cualquier asunto relacionado, en vista de la urgencia impartida.

poder de interpretar e implementar la ley electoral, **ha resuelto que esos votos son y serán contados como votos mixtos, bajo la Ley electoral de Puerto Rico, puesto que reflejan la intención del votante de votar por el PIP para propósitos de la inscripción del partido y, a su vez, votar por los candidatos del PPD para las posiciones de Gobernador y Comisionado.** Los demandantes federales, sin embargo, argumentan que la interpretación que la Comisión ha hecho de la ley y de sus reglamentos es incorrecta, y urgen a la corte a que adopte la interpretación que ellos proponen, que resultaría en la anulación de miles de votos y tendría como consecuencia práctica el haberle negado el derecho al voto a los electores que confiaron en la ley, los reglamentos y los anuncios emitidos por la Comisión sobre cómo votar mixto.

El fundamento de su posición de que estos votos son nulos es exclusivamente su propia interpretación sobre la ley y los reglamentos electorales. Al solicitarle al tribunal federal que adopte su interpretación, los demandantes federales pretenden circunvalar la autoridad de este foro para interpretar la ley local, específicamente qué derechos son los que tienen los electores en Puerto Rico bajo la ley electoral puertorriqueña.

Durante el primer día de vista en el tribunal federal, el testigo presentado por los demandantes en el caso federal ha testificado que los llamados "pivazos" son nulos y que, de su faz, no pueden ser contados. Este testimonio, aunque carente de fundamento en el Reglamento y en la Ley electoral, se presentó como el testimonio de un "experto" debido a su experiencia, a pesar de que el testigo admitió que nunca había visto este tipo de votos antes de estas elecciones. Todo el testimonio giró en torno a la interpretación de este testigo individual sobre qué es lo que dicen la ley y el reglamento electorales, función que le corresponde a las cortes del Estado Libre Asociado de Puerto Rico. Más grave aún es que el tribunal federal ha permitido, por estar ventilándose un entredicho provisional, múltiple prueba de referencia al admitir testimonio de este testigo a los efectos de que a él supervisores no identificados, a quienes otro supervisor que había recibido información de personas que fungieron como funcionarios de colegio, le indicaron que en el escrutinio efectuado en los colegios electorales la noche de las elecciones esos votos se contaron de maneras distintas, unos como votos íntegros para PIP, otros como votos íntegros para el PPD, y otros como votos mixtos.

...

En este momento la Corte de los Estados Unidos para el Distrito de Puerto Rico está ejerciendo jurisdicción en un caso en el que se plantean cuestiones similares y en el que se insiste en que sea ese tribunal el que interprete

normas básicas de nuestro ordenamiento electoral.  Más aún, se pide que ejerza la función de fiscalizar y supervisar nuestro proceso electoral.  Una situación similar surgió en las elecciones del 1980 ante la intervención de la Corte de los Estados Unidos para el Distrito de Puerto Rico sobre asuntos del derecho electoral puertorriqueño. (Énfasis suplido).

El 20 de noviembre de 2004 a las once y cuarenta de la mañana (11:40 a.m.) el Presidente de la Comisión Estatal de Elecciones presentó escrito ante nos titulado "Comparecencia en Cumplimiento de Orden".  Expresa, en su escrito, lo siguiente:

. . .

**2. En lo esencial, adoptamos por referencia el trasfondo procesal y fáctico que exponen los peticionarios en el recurso.  Los peticionarios son electores que votaron en las elecciones generales del 2 de noviembre de 2004. Expresan haber votado bajo la insignia del PIP y por las candidaturas del Lcdo. Aníbal Acevedo y del Lcdo. Roberto Prats.  La CEE reconoce dicho voto como un voto mixto, una categoría de voto reconocida en el ordenamiento.[7]  Así lo expresó la CEE mediante Resolución** (Apéndice, pág. 38). Luego de las elecciones generales, en ausencia de consenso entre los Comisionados Electorales, la CEE procedió con el escrutinio general;[8] en este momento, lo está llevando a cabo conforme a la ley.

---

[7] A esos fines, véanse el Artículo 1.033(33) de la Ley Electoral; las Reglas 50, 78 y 81 del "Reglamento para las Elecciones Generales y el Escrutinio General de 2004", y las Secciones 58 y 59.2 del "Manual de Procedimientos, Elecciones Generales de 2004". Los demandantes en el pleito en trámite en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, parecen haber adoptado la teoría de que el voto de los peticionarios en el caso de epígrafe es nulo, porque no aparece ilustrado en alguno de los ejemplos incluidos en dicho manual.  Los ejemplos son sólo eso, "ejemplos".  No operan como "numerus clausus", y menos tratándose del sufragio.  Para que así fuera, debía de así expresarse en, al menos, el manual y el reglamento, por no decir en la ley en sí.

[8] En el pleito federal, los demandantes alegan que la CEE incidió al no efectuar el escrutinio general simultáneamente con un recuento según dispone la Regla 118 (8) del Reglamento para las Elecciones Generales.  Han expresado que la CEE debió de actuar a base de P.P.D. v. Barreto Pérez, 110 D.P.R. 376 (1980).  **Sin embargo, que sepamos, el Comisionado Electoral del Partido Nuevo Progresista no acudió en revisión ante el Tribunal de Primera Instancia, según se provee en el Artículo 1.016 de la Ley Electoral.**  Por otro lado, dichos demandantes pasan por alto que en P.P.D. v. Barreto Pérez hubo consenso entre los comisionados electorales, y el hecho de que al menos cuando no existe consenso, un reglamento electoral en

**3. Entretanto, se presentó un pleito ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, Civil No. 04-2251 (DRD) (<u>Apéndice del recurso</u>, pág. 11). Incluimos con esta comparecencia, copia del escrito que sometimos en dicho caso (<u>Apéndice</u>, pág. 1). Adoptamos por referencia lo allí expuesto. Ayer en la tarde, el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico expidió una Orden, que acompañamos (<u>Apéndice</u>, pág. 60).**

**4. Con este trasfondo, le corresponde a esta Alta Superioridad evaluar las comparecencias y proceder conforme a derecho.** El derecho al sufragio es fundamental. La CEE así lo reconoce. Para asegurar uniformidad de adjudicación en las papeletas, existen un estatuto y un reglamento. Para asistir, a los funcionarios electorales (de los partidos políticos, quienes trabajan los centros y mesas de votación y de escrutinio) preparó y distribuyó un manual. Cumple con los criterios estatutarios y constitucionales aplicables. No debe privarse de protección a los electores que votaron, ejerciendo su derecho, de manera mixta. (Énfasis suplido).

El 20 de noviembre de 2004 a las once y cuarenta y tres de la mañana (11:43 a.m.) el Comisionado Electoral del Partido Popular Democrático presentó ante nos escrito titulado "Moción para Suplementar Comparecencia del Comisionado Electoral del Partido Popular Democrático". Expresa dicha parte, en su escrito, lo siguiente:

Los electores demandantes emitieron un voto, siguiendo los reglamentos y los anuncios presentados por la CEE en la prensa (ver Anejo 2, pág. 2, "cómo votar mixto"). El tribunal de instancia desestimó el caso sobre la premisa de que los electores demandantes no han sufrido daño alguno porque la CEE ya determinó que va a adjudicar sus votos. **El tribunal, sin embargo, no pareció considerar la demanda federal radicada por varios electores del PNP, en la que cuestionan el derecho de los electores demandantes en este caso a expresar su intención electoral con las marcas que hicieron en sus papeletas.** De una lectura de las alegaciones de la demanda y de los documentos sometidos en ese caso, resulta evidente que la

conflicto con el estatuto no puede prevalecer. <u>Cf</u>. López Feliciano v. Melecio, KPE 00-2255 (904), confirmado en KLCE 2000-1076. El Artículo 6.011 de la Ley Electoral el claro al requerir un escrutinio general como paso previo a un recuento. (Énfasis suplido).

médula de la controversia es la adjudicación de los votos mixtos que contienen tres marcas. **Es la intención de los demandantes federales que el tribunal federal declare esos votos nulos, lo que equivale a una impugnación en el tribunal de los votos de los electores demandantes en este caso. Esa impugnación –aunque en el tribunal federal– requiere que a esos electores se les permita defender su voto.** Ver <u>PPD v Barreto</u>, 111 DPR 199 (1981), Granados Navedo v. Rodríguez Estrada, 127 DPR 1 (1990).[9] **Es oportunidad no la tienen los demandantes en el foro federal, que ha negado la intervención de ellos en ese proceso. Por consiguiente, si este foro no revoca la decisión del tribunal de instancia y expide la certificación, a los demandantes y todos los otros miles electores efectuaron ese tipo de voto se les habrán negado** *de facto* **los derechos que la Ley electoral les garantiza.** Este Foro ha reconocido ya, en <u>Salas Soler v. Secretario de Agricultura</u>, 102 DPR 716 (1974) que cuando un estatuto expresamente dispone que se autoriza a un ciudadano a acudir a los tribunales para hacer valer los principios fundamentales contenidos en ese  estatuto, la doctrina apunta hacia la apertura y liberalización del acceso a los tribunales. Bajo esta doctrina, erró el tribunal de instancia al cerrar sus puertas a los demandantes cuyos votos están en evidente peligro de ser anulados por un tribunal federal.

Durante la tarde de ayer, la Corte de Distrito dictó una Orden disponiendo la apertura de **todos** los maletines de votación y la segregación de los votos mixtos en disputa, supuestamente en aras de evaluar si debe o no dicho foro asumir jurisdicción. Ver Anejo 1. Sin duda, el Foro federal se prepara para, de tratarse de un número sustancial de papeletas, hacer una determinación sobre la validez del voto en cuestión a tenor con las disposiciones de **nuestra Ley Electoral.** Es menester resaltar que a tenor con la Orden en cuestión, el Foro Federal intervendrá en este asunto **sólo** sí su dictamen dispondría del resultado electoral. En otras palabras, la Corte de Distrito ha ignorado el mandato del Primer Circuito a los efectos de que:

> [A] federal court may not inject itself into the midst of every local electoral dispute. Election law, **as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts. . . . .** Thus, with only a few narrow and well-defined exceptions, federal courts are not authorized to meddle in local elections. Consequently, they normally may not

---

[9] Aunque estos casos tratan sobre la impugnación de un voto ilegal, o sea cuando se alega que el elector no tenía derecho al voto, es evidente que cuando un elector si tiene derecho al voto, su derecho tiene que garantizarse aún más y, por lo tanto, tiene que tener alguna manera para defender ese voto en los tribunales.

authorized to meddle in local elections.
Consequently, they normally may not superintend
the step-by-step conduct of local electoral
contests or undertake the regulation of "garden-
variety election irregularities."
    Bonas v. Town of North Smithfield, 265 F.
3d 69, 74 (1st Cir. 2001) (citando a Griffin v.
Burns, 570 F.2d 1065, 1076 (1st Cir, 1978))
(Énfasis nuestro).

Evidentemente, la Orden del Foro Federal tiene el efecto de detener el escrutinio general de actas y de su faz, crea un grave riesgo de irregularidades ya que dispone la apertura de **todos** los maletines (los cueles exceden 7,000), en un término de 48 horas (sábado y domingo) sin hacer un inventario completo y **sustrayendo** un número indeterminado de papeletas.

En adición de crear las dificultades antes mencionadas, la Corte de Distrito, sin tener el asunto ante su consideración, ordenó expresamente la paralización indefinida de cualquier certificación final de un ganador en la contienda para la gobernación.

**Respetuosamente entendemos que sólo una determinación oportuna por parte de este Ilustrado Foro, en torno a la validez de los votos en cuestión habrá de detener las serias disrupciones antes mencionadas**. (Énfasis suplido).

El 20 de noviembre de 2004 el Comisionado Electoral del Partido Nuevo Progresista presentó a las once y cuarenta y ocho de la mañana (11:48 a.m.) "Notificación de Traslado" del presente caso al Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico, a tenor con la sección 1446(d) del titulo 28 U.S.C.A. Acompañó dicho escrito con documento presentado ante el foro primario federal titulado "Notice of Removal".

**El 20 de noviembre de 2004 a las doce y treinta y tres del medio día (12:33 m.) compareció ante nos la co-demandante de autos y aquí peticionaria, señora Marta Font, mediante escrito titulado "Moción de la parte Interventora en Cumplimiento de Orden".** Adoptó como suyos los argumentos del co-demandante, licenciado Manuel ("Manny") Suárez Jiménez y del co-demandado de autos y aquí

recurrido Comisionado Electoral del Partido Popular Democrático. Expresó, en su escrito, lo siguiente:

. . .

4. De entrada, resaltamos el hecho de que en el caso federal **Rosselló et al v. Sila Calderón**, et al, Civil 2004-2251 (DRD), no hay un solo elector como parte que votó como votaron los demandantes en este caso. **La compareciente le informa a esta Curia que por lo menos en cuanto a ella se refiere, ella rehúsa comparecer ante ese foro porque como independista, no le reconoce jurisdicción en Puerto Rico. De hecho, se solicita que se tome conocimiento judicial de que el Partido Independentista Puertorriqueño y sus seguidores, como lo son los demandantes y la compareciente, continuamente han expresado que no le reconocen jurisdicción en Puerto Rico al Tribunal Federal.**

5. **La consecuencia lógica de esta situación es que este es el único foro donde estos electores pueden recurrir para proteger el voto que emitieron el pasado 2 de noviembre.**

6. **Partiendo de la premisa de que el Presidente de la CEE, Hon. Aurelio Gracia estima en 28,000 los votos mixtos como lo que están aquí en controversia, si este Honorable Tribunal no asume jurisdicción, el resultado sería que no habría foro donde estos electores pudieran solicitar amparo ante el ataque colateral que está realizando al presente el Partido Nuevo Progresista contra estos electores en el Tribunal Federal.**

. . .

8. **La compareciente entiende que la controversia ante el Tribunal es estrictamente una de derecho, y puede ser resuelta por esta Curia sin tener que devolver el caso al TPI. La demanda tiene como anejos copia de el voto mixto en controversia, y tiene copia de la demanda enmendada que se está ventilando ante el Tribunal Federal para el Distrito de Puerto Rico la cual crea el caso y controversia requerido para que se emita la sentencia declaratoria solicitada ante el TPI. E.L.A. v. Aguayo, 80 D.P.R. 552 (1958) De igual forma, se le ha dado oportunidad a ser oído a los demandados-recurridos. Por tanto, no hay impedimento legal o constitucional para que esta Curia resuelva la controversia planteada de si son o no son válidos los votos mixtos aquí en controversia.**

9. **Por último, la compareciente hace eco de la posición esbozada por los demandantes en su Petición de Certificación, a los efectos de que su intención al votar bajo la insignia del PIP era la de mantener la franquicia electoral de este partido, mientras votaba a**

**favor de Anibal Acevedo Vilá para gobernador, y Roberto Prats para Comisionado Residente.**

POR TODO LO CUAL, muy respetuosamente se solicita de este Honorable Tribunal que expida el auto solicitado, y resuelva que los votos objeto de esta controversia son válidos. **Se solicita además que se le ordene a la CEE que termine el escrutinio, y de ser necesario, el recuento para el 22 de diciembre de 2004.** De igual forma se solicita que una vez concluya con esta gestión, haga la certificación del ganador para la gobernación que corresponda, de manera que para el inicio de la sesión legislativa, ya el gobernador electo este juramentado. (Énfasis suplido).

**El 20 de noviembre de 2004 a la una y cuarenta y cinco de la tarde (1:45 p.m.) se presentó ante nos "Moción de Intervención" por el Lcdo. Efraím Cintrón García para que se le incluyera como parte de los demandantes de autos** y "se le permita comparecer como su propia representación legal en su propia defensa y gozar de su derecho a presentar prueba a su favor y carearse y contrainterrogar a la parte demandada recurrida". Solicitó sumarse a las alegaciones de los demandantes de autos.

**El 20 de noviembre de 2004 a las cuatro y diez y seis minutos de la tarde (4:16 p.m.) presentó ante nos otro escrito la demandante recurrida, señora Marta Font, titulado "Moción Solicitando Adjudicación Urgente del Caso".** Argumentó, en su escrito, lo siguiente:

1. En la tarde de hoy, recibimos notificación de que el Comisionado Electoral del Partido Nuevo Progresista, Thomas Rivera Schatz, había presentado una "Notificación de Traslado" del caso de marras al Tribunal Federal. Por medio de este escrito, solicitamos que ha pesar de que se ha presentado esta petición a todas luces frívola al Tribunal Federal, esta Curia resuelva la controversia de autos a la brevedad posible, y que se de como no presentada la petición de traslado, por las razones que informamos a continuación.

2. De entrada, es totalmente falso que la demanda en el caso de autos trate de derechos federales bajo la Constitución de los Estados Unidos y/o leyes federales, como se alega en el ¶ 7 de la petición, a la página 2.

Al contrario, siendo **independentistas** los demandantes y la interventora, deliberadamente se ha invocado sola y exclusivamente derechos bajos la Constitución del E.L.A. y la Ley Electoral del E.L.A. porque para dilucidar esta controversia, ninguno de los demandantes reconoce la jurisdicción sobre la materia del Tribunal Federal.

3. Aunque no debería sorprendernos las alegaciones jurisdiccionales falsas del Comisionado y compañero abogado Rivera Schatz, tenemos que informarle a esta Curia que precisamente ante el TPI, los demandantes y la interventora hicieron claro, en presencia de los abogados que firmaron la **Moción de Traslado** que se ha presentado en autos, que los demandantes y la compareciente no le reconocían la jurisdicción del Tribunal Federal en Puerto Rico, y que era por esta razón que no comparecían al Tribunal Federal para vindicar sus derechos al voto.

4. Resaltamos el hecho de que el Comisionado Rivera Schatz reconoce la falsedad de sus alegaciones jurisdiccionales falsas en su petición de traslado, ya que en el ¶8 de su petición, página 2, reconoce que las alegaciones de la demanda son estrictamente estatales, cuando reza "[I]n their Complaint, the Jiménez[10] protest a violation of their constitutional right to vote, a right the **attempt** to base entirely on the due process ritht and equal protection clauses of the Puerto Rico Constitution. The Jimenez artful pleading, however, cannot conceal the essentially federal nature of thei claims." [Enfasis suplido.]

5. Como vemos, para obtener jurisdicción sobre la materia, el Comisionado Rivera Schatz se ve obligado a presentar alegaciones falsas ante el Tribunal Federal para que ejerza una jurisdicción que no existe, y para ello, recurre a re-escribir las alegaciones de la demanda y decir que donde dice noche, en verdad dice día.

6. Las alegaciones de Rivera Schatz en su *Notificación de traslado*, por vía de su exhibit, la Notificación de traslado que presentó en el Tribunal Federal, es igualmente capciosa e intencionada a inducir a error al tribunal federal, por omitir convenientemente que los Tribunales Federales apelativos, en particular, el Primer Circuito en Boston, han resuelto que cuestiones electorales deben resolverse primero en los tribunales estatales. Vease, a manera de ejemplo, los casos Bonas v. Town of North Smithfiel, 265 F 3rd 69, 74 (1st

---

[10] Cuestionamos que el bufete Martínez, Odel & Calabria sea quien redactó esta Notificación de traslado, ya que se hace el mismo error que cometen usualmente los norteamericanos, cuando confunden el apellido de la madre con el del padre. Nótese que la notificación usa el apellido *Jiménez* en vez de *Suárez* o *Suárez Jiménez*.

Cir.), Griffin v. Burns, 570 F. 2d 1065, 1076 (1sr Cir. 1978); Granados Navedo v. Acevedo, 703 S. Supp. 170, 175 D.P.R. 1988); Bennet v. Yhoshina, 140 F 3rd 1218, 1226 (9th Cir. 1998) (citando otros casos). Vease además los casos citados federales citados en **PSP v. CEE**, 110 DPR 400 (1980).

7. A la luz de lo anterior entendemos que el Tribunal Federal no tiene jurisdicción sobre la materia para pedir que proceda el traslado del caso de marras a dicho foro, y que lo que pretende el Comisionado Rivera Schatz con dicho traslado es tornar académico esta controversia amarrando el caso en el Tribunal Federal hasta el 2 de enero, fecha en que debe juramentar el gobernador electo. De esta forma, se le da oportunidad al Tribunal Federal a invalidar los votos mixtos objeto de esta controversia, o en la alternativa, posponer la resolución de la controversia aquí planteada para que la Asamblea Legislativa puede invocar el Art. IV, §9 de la Constitución del E.L.A., y de esta forma, ser la legislatura quien seleccione el gobernador.

POR TODO LO CUAL, muy respetuosamente se solicita de este Tribunal que determine que al haber ausencia de jurisdicción sobre la materia del Tribunal Federal, por ser esta controversia estrictamente fundamentada bajo la Constitución del Estado Libre Asociado de Puerto Rico y sus leyes, no hay razón legal ni jurisdiccional que impida que esta Honorable Curia expida el auto de Certificación, y resuelva la controversia aquí planteada.

De igual forma, habiendo optado el Comisionado Electoral Rivera Schatz a presentar su oposición a la Petición de Certificación con su Moción de traslado al Tribunal Federal, se solicita que se considere cumplida la obligación de este Honorable Curia a darle oportunidad a dicha parte a ser oído , y prosiga con los procedimientos conforme derecho.

JUSTICIABILIDAD

Como paso previo a cualquier análisis de los méritos del presente recurso de certificación, sobre la base del derecho puertorriqueño, debemos analizar lo planteado ante el Tribunal de Primera Instancia y este Tribunal a la luz del principio de justiciabilidad, en cuanto a las doctrinas de legitimación activa, de academicidad y de revisión judicial. Este asunto es inherente al ejercicio de los poderes conferidos al Poder Judicial, dentro

del sistema republicano de gobierno contenido, en la Constitución de Puerto Rico. La autoridad para evaluar y analizar los aspectos relacionados a la justiciabilidad de las causas, nace del elemental principio de que los tribunales existen únicamente para resolver **"casos y controversias"** genuinos surgidos entre partes opuestas, que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas.[11] Los tribunales nos imponemos las limitaciones que emanan de estas doctrinas para, entre otras cosas, observar y garantizar el justo balance que se requiere de las distintas ramas de gobierno en la administración de la cosa pública. El análisis de este principio es, por lo tanto, un imperativo necesario dentro de nuestro sistema de separación de poderes. Las limitaciones que surgen del mismo imponen un mínimo de condiciones para el ejercicio discreto y tolerable de un poder que, de otro modo, constituiría una clara amenaza para la calidad democrática del sistema.[12]

**La aplicación de las diversas doctrinas que dan vida al principio de justiciabilidad determinan la jurisdicción de los tribunales, particularmente con relación a las controversias que se le presentan, al amparo de los derechos que garantiza nuestra Constitución y la democracia que instrumenta. Se trata, pues de una cuestión de umbral que debemos analizar ante el asunto que nos ocupa.**

---

[11] E.L.A. v. Aguayo, 80 D.P.R. 552, 558-559 (1958).

[12] Íd., a la pág. 597.

## LEGITIMACIÓN ACTIVA

La capacidad de una parte para realizar con eficacia actos procesales como parte litigante y comparecer como demandante o demandado, o en representación de cualquiera de ellos, se conoce propiamente como " legitimación en causa". Se requiere legitimación activa para ser demandante y pasiva para ser demandado.[13]

La persona que pretende ser parte ha de tener una capacidad individualizada y concreta en su reclamación ante los tribunales. Para que haya "acción legitimada" tiene siempre que existir la "capacidad para demandar". No obstante, no todo el que tiene "capacidad para demandar", tiene "acción legitimada" en un pleito específico. En cada pleito, además de "capacidad para demandar", la parte interesada deberá demostrar que tiene un "interés legítimo".[14]

La legitimación activa es un instrumento de autolimitación y de prudencia judicial que tiene su génesis en la doctrina de la justiciabilidad de las controversias.[15]

**La doctrina mediante la cual se ausculta la legitimación activa de un reclamante ha sido sostenida por nuestra jurisdicción como uno de los ingredientes necesarios para establecer la jurisdicción de los tribunales, en consideración a principios de justiciabilidad. Tiene legitimación activa una parte que cumple con los siguientes requisitos: (1) la parte que reclama deber haber sufrido un daño claro y palpable: (2) el daño debe ser real, inmediato y preciso, no abstracto o hipotético; (3) debe existir una relación causal**

---

[13] L. Ribó Durán, <u>Diccionario de Derecho</u>, Barcelona, Ed. Bosch, 1987, pág. 364.

[14] E. Serrano Geyls, <u>op. cit.</u>, pág. 132: <u>Col. Ópticos v. Vani Visual Center</u>, <u>supra</u>.

[15] Íd., <u>E.L.A. v. Aguayo</u>, <u>supra</u>.

**razonable entre la acción que se ejecuta y el daño alegado; (4) la causa de acción debe surgir al amparo de la Constitución o de alguna ley.**[16]

OPINIÓN CONSULTIVA

En Ortiz Rivera v. F.E.I.[17] expresamos lo siguiente:

> El concepto de *"opinión consultiva"*, que es de estirpe constitucional, se define como la ponencia legal emitida por un tribunal **cuando no tiene ante sí un caso o una controversia justiciable,** y cuyo resultado, por tanto, no es obligatorio, *Black's Law Dictionary*, pág. 1119 (7ma edición 1999). La doctrina de opinión consultiva es integral al concepto constitucional de *"justiciabilidad"* que rige en nuestra jurisdicción, el cual establece como requisito la existencia de un caso o controversia real para el ejercicio válido del poder judicial.
>
> **La doctrina de opinión consultiva intenta evitar que se produzcan decisiones en el vacío, en el abstracto, o bajo hipótesis de índole especulativa, ya que no es función de los tribunales actuar como asesores o consejeros.** *Com. de la Mujer v. Srio de Justicia*, **109 D.P.R. 715, 721 (1980);** *E.L.A. v. Aguayo*, **80 D.P.R. 552, 558-560 (1968).** En fin, a los tribunales les está vedado emitir opiniones consultivas sujetas a revisión e interpretación por las otras ramas de gobierno. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, Vol. I, pág. 116 (1986).
>
> En cambio, el concepto de *obiter dictum* aplica cuando un tribunal emite expresiones innecesarias **en un caso o una controversia ante sí,** y acerca de interrogantes jurídicas que, propiamente, no le han sido planteadas. *Black's Law Dictionary, op. cit.*, pág. 1100. Tratándose de expresiones no directamente relacionadas con la controversia planteada, éstas no sientan precedente jurídico alguno. *Martínez v. Registrador*, 54 D.P.R. 7 (1938); *Ponce & Guayama Railroad Co. v. Antonetti*, 17 D.P.R. 352 (1911).
>
> Por sus propios términos, la doctrina constitucional de *"opinión consultiva"* es de aplicación sólo cuando el asunto sobre el cual un tribunal se expresó **no** cumplía con el requisito constitucional de *"justiciabilidad"*, **es decir, no se trataba propiamente de un "caso" o una**

---

[16] García Oyola v. J.C.A., 142 D.P.R. 532 (1997); P.P.D. v. Rosselló González, 139 D.P.R. 643 (1995).

[17] Ortiz v. Panel F.E.I., 155 D.P.R. ___ (2001), 137 J.T.S., res. el 8 de octubre de 2001, 2001 T.S.P.R. 134.

"**controversia**". Los tribunales deben estar atentos de que los asuntos ante su consideración sean justiciables. De lo contrario, procede desestimar, sin mayor explicación. (Énfasis suplido).

De las alegaciones de los demandantes ante el Tribunal de Primera Instancia y aquí peticionarios se desprende en forma diáfanamente clara que no exponen la existencia de un daño inmediato, claro, palpable, real, preciso y concreto sufrido por ellos, por lo que no tienen legitimación activa para presentar una acción de sentencia declaratoria ante el Tribunal de Primera Instancia. El referido daño no puede ser abstracto, hipotético o especulativo. La Comisión Estatal de Elecciones tomó una determinación favorable a los aquí peticionarios a los efectos de que se contaran sus votos como mixtos, imprimiéndole el valor y significado a todas las marcas, que estos admiten en su escrito ante este Tribunal, hicieron en la papeleta. Dicha determinación de la Comisión Estatal de Elecciones como organismo con autoridad, competencia y jurisdicción sobre ese asunto está cobijada bajo la presunción de legalidad y corrección y le es favorable a los aquí peticionarios. Por lo que éstos **no tienen "caso y controversia"** alguno que presentar ante el Tribunal de Primera Instancia mediante demanda de sentencia declaratoria pues no han sido afectados por la determinación de la Comisión Estatal de Elecciones ni tampoco existe un estado de derecho que delimitar a través de ese recurso procesal, sobre el alcance y valor de su voto emitido el pasado 2 de noviembre de 2004, pues dicho organismo le imprimió el significado pretendido por los aquí peticionarios. El Tribunal de Primera Instancia y este Tribunal no tienen un asunto justiciable pues no ha sido presentado por los demandantes de autos y aquí peticionarios un **"caso y controversia."**

Los peticionarios alegan ante nos que estando pendiente ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico una acción donde se cuestiona la validez constitucional de las normas y su aplicación sobre el valor y significado de determinados votos mixtos, la validez de su voto **podría** verse afectada por una decisión de ese Tribunal. Por ello entienden y efectivamente alegan que el Tribunal de Primera Instancia de Puerto Rico y este Tribunal, foros donde no se ha rebatido en forma alguna la presunción de legalidad y corrección de la determinación de la Comisión Estatal de Elecciones por las partes adversamente afectadas, tiene jurisdicción para resolver lo que nunca se le ha planteado por esas partes adversamente afectadas como resultado del procedimiento celebrado ante la Comisión Estatal de Elecciones y la decisión de su Presidente. Concluimos que si los peticionarios entienden que el tribunal federal **podría** afectar la presunción de legalidad y corrección que cobija la determinación de la Comisión Estatal de Elecciones, que les favorece en cuanto al valor y significado de sus votos, el único recurso con que cuentan es intervenir en el proceso pendiente ante ese foro. No constituye fundamento de derecho válido para intentar privar de jurisdicción al foro judicial federal y para que éste Tribunal asuma jurisdicción sobre un asunto planteado inicialmente ante el primero que alguna de las partes tenga como posición o criterio ideológico no reconocer la autoridad y jurisdicción de los tribunales federales sobre algún asunto o controversia trabado entre ciudadanos de Estados Unidos residentes en Puerto Rico y su gobierno.

El Comisionado Electoral del Partido Popular Democrático pretende de este Tribunal, y así efectiva y expresamente solicita

su intervención, porque el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico **podría** asumir jurisdicción sobre la base de la declaración de un testigo presentado por la parte allí demandante durante la celebración de una vista evidenciaría y **podría** interpretar la Ley Electoral de Puerto Rico y su Reglamento. No obstante, ignora y soslaya los principios de derecho constitucional puertorriqueño relacionados con los principios de justicialidad de los asuntos sometidos a los tribunales de Puerto Rico de legitimación activa y de revisión judicial. Estos principios contenidos en la Constitución de Puerto Rico regulan la intervención y jurisdicción del Tribunal General de Justicia de Puerto Rico, incluso de este Tribunal.

No existe para el que suscribe duda alguna al examinar los escritos presentados por algunos demandantes de autos y aquí peticionarios y los presentados por algunos demandados de autos, aquí recurridos de la presencia de una colusión entre ellos para intentar afectar la jurisdicción federal sobre el asunto allí sometido y tratar de someterlo a la atención de este Tribunal, en primera instancia y en jurisdicción original, en desafío al derecho constitucional puertorriqueño y al derecho estatutario y constitucional de Estados Unidos. Al acoger la Mayoría tal pretensión y tomar tal curso de acción participan en la gestación de un monstruoso engendro, constitutivo de un acto de desobediencia civil.

Este Tribunal, a pesar de su nombre (Tribunal Supremo), no tiene autoridad para imprimirle a sus facultades una dimensión que la Constitución de Puerto Rico no le ha otorgado. Tampoco puede abrogarse la jurisdicción del tribunal federal, a tenor con el ordenamiento estatutario federal. El Tribunal de Primera Instancia

y este Tribunal sólo pueden emitir decisiones vinculantes para las partes que acuden ante si cuando se le presenta un **"caso y controversia"** y tiene jurisdicción para así hacerlo. Concluimos que el asunto ante nos no es uno justiciable bajo el derecho puertorriqueño, porque los demandantes de autos, aquí peticionarios, no tienen legitimación activa para promover su pleito y no han presentado un **"caso y controversia"** ante el Tribunal de Primera Instancia y este Tribunal. Este Tribunal carece de jurisdicción para actuar bajo el derecho estatutario federal y el derecho constitucional puertorriqueño. Concluimos, además, que los peticionarios pretenden de este Tribunal la emisión de una **opinión consultiva** que les favorezca, a lo cual ha accedido la Mayoría en completo y absoluto menosprecio a los principios constitucionales puertorriqueños y de Estados Unidos, antes mencionados. La actuación altamente irregular y apresurada de la Mayoría en este asunto priva de legitimidad a este Tribunal, pues a tenor con el derecho estatutario federal y nuestro derecho constitucional, no resulta vinculante su decisión, además, de restarle confiabilidad y credibilidad ante la ciudadanía.

Por todo lo antes expuesto **DISIENTO** vehemente y desde los más profundo de mi ánimo y espíritu de lo actuado por la Mayoría en este asunto.

Efraín E. Rivera Pérez
Juez Asociado
